**Dovie Irene HENRY, Appellant,**

v.

**CULLUM COMPANIES, INC. N/K/A Tom Thumb Food & Drugs, Inc., Appellee.**

No. 07–94–0098–CV.

Court of Appeals of Texas, Amarillo.

Jan. 26, 1995.

Rehearing Overruled Feb. 21, 1995.

Alfred W. Ellis, Dallas, for appellant.

Burford & Ryburn, Joann N. Wilkins, David M. Weaver, Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In one point of error, appellant Dovie Irene Henry contends the trial court erred in rendering a summary judgment in favor of appellee Cullum Companies, Inc. n/k/a Tom Thumb Food & Drugs, Inc., based on appellee's motion asserting that appellant had no valid right of recovery. For the following reasons, we affirm the judgment of the trial court.

On March 29, 1992, appellant was shopping at one of appellee's grocery stores in Garland, Texas when she fell. On October 12, 1992, she brought suit against appellee for injuries she sustained in the fall, alleging the accident and the resulting injuries were proximately caused by appellee's negligence. In her second amended original petition filed on August 20, 1993, appellant attempted to broaden the scope of her suit by seeking recovery for violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).[1] In that pleading, she alleged appellee's conduct "amounted to false, misleading and deceptive acts and practices in each of the following respects:

1. The [appellee] impliedly represented to the [appellant] that its services had characteristics, uses, and benefits, which they did not have;

2. The [appellee] impliedly represented to the [appellant] that its services were of a particular standard, quality, or grade, when they were of another;

3. The [appellee] impliedly represented to the [appellant] that its floors were reasonably safe for use by its customers;

4. The [appellee] breached its implied warranty to provide the [appellant] with a

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.1994).

reasonably safe place to conduct her business as a consumer; and

5. The [appellee] engaged in an unconscionable act or course of action with regard to the [appellant]."

On August 27, 1993, appellee filed a motion for summary judgment premised on the basis that appellant's suit was for negligence pursuant to a premises liability theory and, as such a case was not within the purview of the DTPA, *no cause of action for alleged DTPA violations existed.* The trial court agreed and, on November 19, 1993, orally announced it was granting a partial summary judgment on that basis and made a corresponding docket notation to that effect.

On November 22, 1993, the parties filed an agreed motion seeking severance of the DTPA claims from the premise liability cause of action. In that motion, the first paragraph reads, "[O]n November 19, 1993, the Court heard and granted the Motion for Partial Summary Judgment of Cullum Companies, Inc. n/k/a Tom Thumb Food & Drugs, Inc. as to Plaintiff's claims under the DTPA. An Order Granting Summary Judgment has or will be entered in this case." The motion was signed by appellee's attorney who, by his signature, attested to its contents.

On December 2, 1993, appellant filed her third amended original petition in which she deleted her DTPA claims and proceeded solely on the premises liability allegations. On January 19, 1994, the trial court entered an order granting the agreed motion to sever the DTPA claims and carrying those claims into the cause number under which this appeal is perfected. On January 26, 1994, the trial court signed the written order memorializing its grant to appellee of summary judgment as to the DTPA claims.[2] In that order, the court refers to the November 19, 1993 hearing and notes its examination of, *inter alia,* the pleadings and evidence "which were timely filed in due form and properly before the Court at the time of the Court's consideration of the Motion for Partial Summary Judgment."

In reply to appellant's point of error, appellee initially argues this appeal presents nothing for review as appellant abandoned her DTPA claims by amending her pleading and deleting those claims after the hearing on the motion for summary judgment, but prior to the entry of the orders granting summary judgment and severing those claims from the case. We disagree.

■ A judgment routinely goes through three stages: rendition, reduction to writing and judicial signing, and entry. A judgment is "rendered" when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk. *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970); *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, 292 (1953).

■ The rendition of the trial court's decision, whether in open court or by official document of the court, is the critical moment when the judgment becomes effective. The subsequent reduction of the rendered judgment to writing is typically carried out by the party favored by the judgment. The signature of the trial court upon the writing is merely a ministerial act of the court conforming to the provision of Rule 306a(2) of the Texas Rules of Civil Procedure which calls for "all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein." The trial judge's signature upon the written judgment does not affect or change the date of the rendition of the judgment. A judgment is "entered" when it is recorded in the minutes of the trial court by a purely ministerial act of the trial court's clerk, thereby providing enduring evidence of the judicial act. *Id.*

■ In this record, we have no statement of facts showing the trial court's comments at the conclusion of the summary

---

judgment hearing. Nevertheless, we are satisfied there is sufficient proof to establish that the rendition of the trial court's summary judgment as to appellant's DTPA cause of action occurred on November 19, 1993. As set out above, the recitations in the agreed motion for severance acknowledged the rendition of a partial summary judgment on that date. Additionally, as we have noted, the docket sheet notation evidences the trial court's action. We recognize that a trial court's mere docket notation that it has granted a summary judgment typically does not, by itself, constitute a rendition of judgment. *See W.C. Banks, Inc. v. Team, Inc.,* 783 S.W.2d 783, 785 (Tex.App.—Houston [1st Dist.] 1990, no writ) (an unsigned docket sheet entry reading "Judgment for Plaintiff rendered this day. Orders to follow" was not sufficient to constitute a rendition of judgment because parties agreed the judge never made an oral announcement in court and there was no evidence the unsigned docket notation was made by the trial judge or at his direction.)

Appellee argues that the facts in *Fuentes v. Texas Employers' Insurance Association,* 757 S.W.2d 31 (Tex.App.—San Antonio 1988, no writ) are analogous to those now before us and contends that we should follow the court's holding in that case. Fuentes filed suit against his workers' compensation insurance carrier alleging violations of the Texas Insurance Code as well as unfair/bad faith settlement practices. *Id.* at 32. On January 23, 1986, in response to the carrier's motion for partial summary judgment as to the statutory cause of action, the trial judge, by letter, announced his decision to grant the requested judgment. In the same letter, the judge also announced he was sustaining the carrier's special exception to Fuentes's common law cause of action and afforded Fuentes leave to amend those allegations before February 28, 1986. On February 27, 1986, Fuentes filed a first amended original petition in which he alleged only the common law tort of a breach of the duty of good faith and fair dealing in insurance contracts as well as constructive fraud. On December 29, 1986, the trial court signed a written summary judgment in favor of the carrier decreeing Fuentes take nothing.

As relevant here, Fuentes sought to appeal what he alleged was the trial court's rendition of summary judgment as to his statutory cause of action. The appellate court held that it could not consider that question because the January 23, 1986 letter was not sufficient to constitute a judgment on the matter and, by filing his amended petition, he had abandoned his statutory cause of action prior to the actual rendition of the summary judgment in the case. *Id.* at 32–33.

Appellee's reliance on *Fuentes* is misplaced because that case is distinguishable from the one now before us. In *Fuentes*, the trial judge's announcement, by letter, of his decision to grant the summary judgment clearly did not meet the requisites necessary for a "rendition" of judgment in that the announcement was not made orally in open court or by memorandum filed with the clerk. *See Comet Aluminum Co.,* 450 S.W.2d at 58–59. That being so, the summary judgment was not rendered until the trial court actually signed the written order, ten months after Fuentes had deleted his statutory cause of action from his pleadings.

In contrast, the trial judge in this case initialed his docket sheet notation, thereby showing that he had actually made the entry, and the notation itself sufficiently declared the court's decision. Thus, we can only conclude the trial court's notation, together with the averments in the agreed motion for severance, are sufficient evidence that the summary judgment was orally rendered on November 19, 1993, at a time when appellant's DTPA allegations were still contained in her pleadings. We must, therefore, address her point of error. Reiterated, she alleges the trial court erred in holding she had "no valid DTPA claim."

◼ In determining this appeal, we must bear in mind the litany of standards by which the validity of summary judgments is measured. The summary judgment procedure is designed to eliminate unmeritorious claims and untenable defenses when there is no genuine issue of material fact. *Webb v. Eledge,* 678 S.W.2d 259, 261 (Tex.App.—Amarillo 1984, no writ). Thus, a summary judgment movant has the burden of proving there

is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990).

In deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Id.* at 302. A defending party is entitled to prevail on a motion for summary judgment if the party establishes, as a matter of law, that no genuine issue of material fact exists about one or more essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

In order to recover under the DTPA, a plaintiff must initially establish that he or she qualifies as a "consumer" as defined by the statute. *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). The threshold question of whether or not a plaintiff is a consumer is a question of law to be determined by the trial court. *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 831 (Tex.App.—Amarillo 1993, writ denied). Failure to qualify as a consumer under the DTPA will defeat a plaintiff's claim in that regard.

In its motion for partial summary judgment, and as reargued in its third reply point, appellee contends that appellant does not qualify as a "consumer" within the meaning of the DTPA and, therefore, is not entitled to bring a cause of action under the statute. In relevant part, the DTPA defines a consumer as "an individual ... who seeks or acquires by purchase or lease, any goods or services...." Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). The Texas Supreme Court has interpreted this provision of the statute as establishing certain requirements which must be met in order to secure consumer status. Initially, a plaintiff must show that he or she: 1) sought or acquired; 2) goods or services; 3) by purchase or lease.

Thereafter, a plaintiff must show that: 4) the goods or services purchased or leased; 5) form the basis of his or her complaint. *Sherman Simon Enter., Inc. v. Lorac Serv. Corp.,* 724 S.W.2d 13, 15 (Tex.1987); *Chastain v. Koonce,* 700 S.W.2d 579, 580 (Tex.1985).

As to the first requirement, an individual "seeks" goods or services when he or she requests or asks for them. *Westinghouse Supply Co. v. Page & Wirtz Construction Co.,* 647 S.W.2d 44, 47 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). In the alternative, one "acquires" goods or services when one "get[s] or come[s] to have [the goods or services] as one's own." *Hernandez v. Kasco Ventures, Inc.,* 832 S.W.2d 629, 634 (Tex. App.—El Paso 1992, no writ). As to the second requirement, "goods" are defined by the DTPA as "tangible chattels or real property purchased or leased for use." Tex.Bus. & Com.Code Ann. § 17.45(1) (Vernon 1987). On the other hand, "services" are defined as the "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* § 17.45(2).

Considering the first prong of the test, it is clear that appellant sought to purchase appellee's goods, *i.e.,* groceries. Therefore, the first prong of the test can be met on this basis. However, appellant does not complain of any of appellee's tangible goods she was seeking to purchase, nor does she attempt to impose liability based on such goods.[3] Therefore, she necessarily suggests she sought or acquired, by purchase or lease, a "service" from appellee.

Again, broken down into its various elements, "services" are defined in the DTPA as: 1) work, labor, or service; 2) that are purchased or leased; 3) for use; 4) including services furnished in connection with the sale or purchase of goods. Appellant argues in her brief that "the use of the [appellee's] floors are clearly 'furnished in connection with the sale of goods' and thus fall within the definition of 'services' under section

---

**3.** To do so would foreclose any liability on appellee's part because of the narrow definition of goods. That is, the second prong requirement, that the goods purchased form the basis of the

complaint, would require that the injury arise from the tangible chattels appellant sought to purchase. Clearly, that is not the case here.

17.45(2) of the Act." Therefore, the question before us is whether, under the particular circumstances of this case, the "use of the floors" constituted a "service" as defined by the DTPA.

Appellee has cited the case of *Rojas v. Wal–Mart Stores, Inc.*, 857 F.Supp. 533 (N.D.Tex.1994), in which the court was faced with facts very similar to those before us. In that case, Rojas slipped and fell in a puddle of liquid laundry detergent on the floor while shopping in the defendant's store. *Id.* at 535. Based on alleged violations of the DTPA, as well as a premises liability theory, Rojas sought recovery for injuries sustained as a result of the fall. After removal to the federal court, the defendant moved for summary judgment as to the DTPA claims contending Rojas was not a "consumer" within the purview of the statute.[4] *Id.* at 536. Specifically, the defendant argued Rojas did not acquire consumer status because her injuries did not arise from her attempt to purchase goods at the defendant's store; rather, such injuries arose from her incidental use of the defendant's floors to purchase the goods. In response, Rojas posited her use of the floors was a "service" furnished by the defendant in connection with the sale of its goods.

En route to granting summary judgment as to Rojas's DTPA claims, the court reasoned that Rojas's presence at the defendant's store was simply to buy goods and that her use of the floors was purely incidental to that end. *Id.* at 537. The court noted Rojas neither paid for, nor was she expected to pay for, the use of the defendant's floors. The court also noted the condition of the floors was not a direct service sought by Rojas, nor was the condition of the floors her reason for shopping at the defendant's store. Thus, the court concluded, inasmuch as Rojas did not seek or acquire, by purchase or lease, the use of the floors, Rojas necessarily had to be seeking to purchase the defendant's goods. As her DTPA claims did not arise from the purchase or attempted purchase of the defendant's goods, such goods did not form the basis of her complaint. The court

thus held Rojas had failed to establish she was a "consumer." *Id.*

Initially, the *Rojas* court misinterpreted the issue before it. Although it initially noted that Rojas was arguing that the use of the floors was a "service" because the use of the floors was furnished in connection with the sale of goods, the court failed to discuss this particular issue in the course of its analysis and decision that Rojas's claim did not arise from her effort to purchase "goods."

Appellee also cites *Rickey v. Houston Health Club, Inc.*, 863 S.W.2d 148 (Tex. App.—Texarkana 1993), *writ denied, improvidently granted*, 888 S.W.2d 812 (1994). In that case, the appellate court was called upon to determine whether the use of a defendant's facilities constituted a "service" within the purview of the first provision of the DTPA's definition of "services." The question before the court was whether a purchaser of a membership at a health club was a "consumer" for purposes of the DTPA. In that case, Rickey had entered into an installment contract to use the facilities of the health club, including a jogging track. *Id.* at 149. While jogging on that track, Rickey fell and injured himself, resulting in a suit against the health club alleging they had violated the DTPA by misrepresenting the quality of its jogging track. *Id.* at 149, 151. Finding the use of the facilities, including the jogging track, was the actual service Rickey had purchased, the court held Rickey was a buyer of "services" within the purview of the DTPA. *Id.* at 151–52.

However, in arriving at its decision, the *Rickey* court specifically commented that the plaintiff had "contracted to use the premises for a specific purpose, i.e., to jog" and that the use of the facilities for that purpose was a "service" within the purview of the DTPA. *Id.* at 151. In the course of its discussion, the court noted that the specific purpose contract distinguished the case before it from a mere "slip and fall tort case." *Id.* at 152.

█ We agree with the *Rickey* court that there is a distinction between the two provi-

---

4. The defendant also sought, and was granted, summary judgment as to the premises liability claim.

sions of the DTPA's definition of "services," i.e., 1) a "service purchased or leased for use," such as that involved in the *Rickey* case, and 2) "services furnished in connection with the sale or repair of goods," such as that involved in this case. In the former, the service is clearly the objective of the bargain, the desired benefit to be received as a direct result of a purchase or lease. For example, in *Rickey*, the objective of the plaintiff's purchase was the use of the health club's jogging track and other facilities.

On the other hand, services "furnished in connection with the sale or repair of goods" are not necessarily the principal purpose of the bargain between the person seeking to purchase goods and the prospective seller. Rather, the goods themselves are the primary benefit to be obtained as a result of the transaction and the services are merely collateral to that end. Services "furnished in connection with the sale or repair of goods" are of a nature such as a warranty or a maintenance obligation accompanying a purchased good or a guarantee to replace lost or stolen checks provided in connection with the sale of traveler's checks. *See, e.g., Thomas C. Cook, Inc. v. Rowhanian,* 774 S.W.2d 679, 682 (Tex.App.—El Paso 1989, writ denied). Thus, such services must be directly, and not incidently, related to the sale of goods.

Application of that reasoning demonstrates that, in this case, the "service" of which appellant complains, i.e., the use of the floors, is not within the DTPA's definition of "services," the abuse of which might give rise to a cause of action under that statute. That being the case, appellant was not entitled to bring a cause of action under the DTPA.

Accordingly, appellant's point of error is overruled and the judgment of the trial court is affirmed.