Herlinda RAMIREZ, Appellant,

v.

H.E. BUTT GROCERY COMPANY, Appellee.

No. 10–94–230–CV.

Court of Appeals of Texas, Waco.

July 12, 1995.

Rehearing Overruled Aug. 30, 1995.

Thomas E. Trahan, Sommerman & Moore, P.C., Dallas, for appellant.

Richard A. Sparr, Jr. & Mark P. Brewster, Sparr & Associates, Inc., San Antonio, Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, San Antonio, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Herlinda Ramirez sued H.E. Butt Grocery Company (HEB) on negligence and Deceptive Trade Practices Act (DTPA) theories after a plastic garbage can fell on her from an overhead shelf at an HEB grocery store. The court directed a verdict for HEB on Ramirez' DTPA claim. After the jury returned an adverse verdict on her negligence claim, the court entered a take-nothing judgment.

Ramirez appeals on six points, alleging that the court erred in failing to give several requested jury instructions, in directing a verdict on her DTPA claim, and in allowing an unqualified witness to give expert testimony. We will affirm the judgment.

On May 27, 1992, Ramirez, who was then seventy-seven years old, testified that she was shopping at the HEB grocery store in Ennis. She entered the detergent aisle and saw a man standing there. She started down the aisle and felt a "strong blow" to her head and shoulder. As she stood holding onto her shopping cart, she saw three large plastic garbage cans on the floor. Ramirez said that she had seen the unidentified man a few days earlier at the store helping customers carry their groceries. Jimmy Garcia, an HEB employee, approached Ramirez and escorted her to the office.

David Martinez, an HEB employee, testified that he was responsible for stocking the general merchandise department, including the plastic garbage cans. He said his supervisor had made the decision to place the trash cans on the "riser" above the detergent shelves.

Garcia testified that he was in the frozen food section at the time of the incident. He heard a noise and went around the corner to the next aisle. He saw Ramirez holding her right shoulder. According to Garcia, Ramirez told him that the unidentified man had been reaching for a trash can and that the trash can had fallen—hitting her on the shoulder. Garcia saw one trash can lying in the aisle. Garcia said that the man had on "suit clothes" and was not wearing an HEB uniform. He later saw the man leaving the

store with a trash can in his shopping cart. Garcia said that he had not seen the man in the store since the accident.

Garcia further testified that retrieving a trash can from the riser required a ladder and that customers wanting a trash can were supposed to ask for customer service. He said, however, that there was no sign on the aisle telling the customer to seek assistance. He stated that, on a different aisle where styrofoam coolers were on the top shelf, a sign was posted asking customers to seek assistance if they wanted a cooler.

Laura Urquiza testified that she was the assistant store director who was in charge on the day in question. She stated that Garcia informed her that Ramirez had been hit by a trash can. Urquiza asked Ramirez if she was "okay," and Ramirez responded that she was fine. According the Urquiza, Ramirez then related the facts of the accident to her. Ramirez told her that she had been walking down the aisle when a man reached up and pulled down a trash can. As he pulled the trash can, it fell, striking Ramirez on the shoulder. Ramirez told Urquiza that the man was a customer.

Urquiza filled out an "incident report." The report, which was admitted into evidence, stated: "Customer # 1 reached up to take down a trash can off high shelf.... Customer # 2 passed by as trash cans (3) fell hitting customer # 2 ([H]erlinda Ramirez). Customer # 1 unknown." Urquiza testified that the information contained in the incident report had come from Ramirez.

Ramirez' first four points complain that the court erred by failing to include several requested instructions in the jury charge. Her arguments arise from the fact that the court charged the jury on "negligent activity" but refused to instruct the jury on "premises liability."

In point one, Ramirez complains of the court's failure to include her requested additional instruction on proximate cause. The court gave the following instruction:

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have

occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Ramirez requested the court to additionally instruct the jury:

You are further instructed that although an act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or similar event, might reasonably result therefrom, foreseeability is established if the actor, as a person of ordinary intelligence and prudence, should have anticipated the danger to others created by the negligent act, and it is not required that the actor anticipate exactly how the injuries will grow out of the dangerous situation.

The court denied her request.

■ Ramirez argues that her proposed instruction is suggested by *Clark v. Waggoner*, 452 S.W.2d 437, 439–40 (Tex.1970). HEB argues that *Clark* is not a jury-charge case, that the instruction given tracks the language of section 2.04 of the Pattern Jury Charges, and that the Supreme Court has stated that well-settled jury charge definitions and Pattern Jury Charges should not "be embellished with ... addendum." *See* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.04 (1987); *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984).

*Clark* does not stand for the proposition that a jury must be charged with the additional language Ramirez requested. *See Clark*, 452 S.W.2d at 439–40. Here, the court used the language suggested by the Pattern Jury Charges for both basic negligence and premises-liability theories. *See* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.04; 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 65.03 (1990). The Court in *Lemos* stated, "Judicial history teaches that broad issues and accepted definitions suffice and that a workable jury system demands strict adherence to simplicity in jury charges." *Lemos*, 680 S.W.2d at 801. The court did not err in

failing to give the requested additional instruction on proximate cause. We overrule point one.

In points two through four, Ramirez complains of the court's failure to give premises-liability instructions. The court charged the jury with the following instructions:

> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Ramirez requested the court to instruct the jury as follows:

> An owner or occupier of premises should know of a dangerous condition if a reasonably careful inspection would reveal it.

> "Negligence," when used with respect to an owner or occupier of a premises, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier knows about or in the exercise of ordinary care should know about.

> "Ordinary care," when used with respect to an owner or occupier of a premises, means that degree of care which would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

The trial court also denied these instructions.

■ Ramirez argues that, by failing to give the jury the requested instructions, the court deprived her of a premises-liability cause of action. She argues that she pled two theories: first, that a man acting on behalf of HEB was negligent; second, that HEB, through its employees, had created a dangerous premises condition by putting the

trash cans on the top shelf.[1] She argues that, because the court denied this second theory of recovery, the judgment cannot stand. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992). HEB argues that the court's broad instruction worked to Ramirez' benefit—that her burden was lessened because she was not required to persuade the jury on sub-issues designed to protect the defendant in a premises-liability case.

■ The elements of a premises-liability cause of action are:

(1) actual or constructive knowledge of some condition on the premises by the owner-occupier;

(2) the condition posed an unreasonable risk of harm;

(3) the owner-occupier did not exercise reasonable care to reduce or eliminate the risk; and

(4) the owner-occupier's failure to use such care proximately caused the plaintiff's injuries.

*Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983)).

■ Recovery on a negligent-activity theory requires that the plaintiff's injury be a contemporaneous result of the activity itself rather than a result of a condition created by the activity. *Id.* In *Keetch*, the plaintiff alleged that Kroger had exposed its customers to an unreasonable risk of falling by negligently conducting its plant-spraying activity in an area open to customers.[2] *Id.* The trial court instructed the jury on premises liability but refused to submit a negligent-activity instruction. The Supreme Court, emphasizing the difference between negligent-activity and premises-liability theories, affirmed the trial court. *Id.*

Applied to the facts here, the "negligent activity" was either (1) the unidentified man's pulling the trash can from the riser causing it to strike Ramirez, or (2) HEB's stacking of the trash cans on the riser. *See id.* On

---

**1.** We accept her argument even though her pleadings are less than specific.

**2.** Keetch alleged that Kroger employees had negligently sprayed plants with a waxy substance,

that the waxy substance had gotten on the floor, and that she slipped and fell on the slick floor that resulted.

appeal Ramirez argues that she was entitled to a premises-liability instruction because she was not injured as a contemporaneous result of the stacking; rather she was injured by a condition created by the stacking activity. *See id.*

■ "Negligent activity" and "premises liability" are both negligence-based theories of liability. *Id.* "[A]n invitee's suit against a store owner is a simple negligence action.... [T]he standard of conduct required of a premises occupier toward his invitees is the ordinary care that a reasonably prudent person would exercise under all the pertinent circumstances." *Corbin,* 648 S.W.2d at 295. The more specific "elements" of premises liability "simply tailo[r] the traditional test of the conduct of a reasonably prudent person to a specific category of defendants, namely, premises occupiers." *Id.*

The court's instructions on "negligence" and "ordinary care" track the suggested language in the Pattern Jury Charges for basic negligence causes of action. 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.01. The jury was asked:

> Did the negligence, if any, of H.E. Butt Grocery Co. proximately cause the injury in question?
>
> Answer "yes" or "no"   <u>No</u>

Having instructed the jury on basic negligence, the court relieved Ramirez from having to prove more "tailored" elements of premises liability, namely that HEB "knew or should have known about the risks accompanying the premises condition." *See Corbin,* 648 S.W.2d at 295.

Neither party cites a case in which a losing plaintiff complained that the trial court erred in giving broad negligence instructions rather than premises-liability instructions. Most frequently, the defendant complains that the court erred in instructing on general negligence rather than submitting the more restrictive premises questions. *See Texas Dep't of Transp. v. Ramming,* 861 S.W.2d 460 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (State not entitled to a premises instruction because plaintiff had pled negligent-activity theory); *University of Texas Med. Branch v. Davidson,* 882 S.W.2d 83 (Tex.App.—Houston [14th Dist.] 1994, no writ) (court erred in submitting general negligence question on a premises defect case under the Texas Tort Claims Act); *Stanley Stores, Inc. v. Veazey,* 838 S.W.2d 884 (Tex. App.—Beaumont 1992, writ denied). In other cases, the plaintiff complains because the trial court gave the more restrictive premises instruction and denied his request for a general negligence question. *Keetch,* 845 S.W.2d at 264; *H.E. Butt Grocery Co. v. Warner,* 845 S.W.2d 258 (Tex.1992), *on remand,* 856 S.W.2d 591 (Tex.App.—Waco 1993, no writ).

The jury, having heard the evidence, found that HEB's activity did not cause Ramirez' injury. Thus, it determined that stacking the trash cans on the riser either was not negligence or did not cause the injury. Under the facts of this case, it follows that the premises' condition did not pose an unreasonable risk of harm. *See Keetch,* 845 S.W.2d at 264.

■ Although, when requested, a court should submit appropriate accompanying instructions to a broad-form issue, its failure to do so is not reversible error *per se.* *Island Recreational Dev. v. Republic of Texas Sav.,* 710 S.W.2d 551, 555 (Tex.1986). To determine whether the charge error is reversible, we must consider the pleadings, the evidence, and the charge in its entirety. *See id.* Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment. *Id.*; TEX.R.APP.P. 81(b)(1).

Under the instruction given, the jury could have found HEB negligent even if HEB did not know or could not have known that the stacked trash cans posed an unreasonable risk of harm. The jury did not find negligence on the less exacting definition; thus, Ramirez could not have been harmed by the court's failure to give the more exacting instruction. *See* TEX.R.APP.P. 81(b)(1). Any error in failing give the requested instructions was not harmful. *See id.* We overrule points two, three, and four.

Ramirez' fifth point complains that the court erred in granting HEB's motion for directed verdict on her DTPA cause of action. In reviewing a case in which the verdict has been directed, appellate courts must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex.1988) (citing *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983)). If there is any conflicting evidence of probative value in the record, a determination of the issue is for the jury. *White*, 651 S.W.2d at 262.

The test for whether a person is a "consumer" under the DTPA has two prongs. First, the plaintiff must have sought or acquired goods or services by purchase or lease. TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). Second, the goods or services sought or acquired must form the basis of the DTPA complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). Whether a party is a consumer is a question of law for the trial court to determine based upon all of the evidence. *Security Bank v. Dalton*, 803 S.W.2d 443, 451 (Tex. App.—Fort Worth 1991, writ denied).

Clearly, Ramirez entered the grocery store to purchase merchandise, thus satisfying the first prong's requirement. *See* TEX.BUS. & COM.CODE ANN. § 17.45(4). The question becomes whether she satisfies the second requirement that the goods or services sought or acquired form the basis of her DTPA complaint. *See Cameron*, 618 S.W.2d at 539.

The Amarillo Court has recently held that a plaintiff who brought a DTPA slip-and-fall action against a grocery store was not a "consumer." *Henry v. Cullum Companies, Inc.*, 891 S.W.2d 789, 796 (Tex.App.—Amarillo 1995, writ requested). The court found that Henry, who had slipped and fallen on a slick floor, was a "customer" under the first prong because she sought to purchase goods, *i.e.*, groceries. *Id.* at 794. However, Henry's DTPA claim was not based on the "goods," *i.e.*, groceries, that she sought to purchase. Although she argued that the floors were furnished as a "service" in connection with the sale of goods and that the store had misrepresented this service, the court determined that, under the facts of the case, the "use of the floors" did not constitute a "service" as defined by the DTPA. *Id.* at 796.

"Services" are defined as the "work, labor or services purchased or leased for use, including services furnished in connection with the sale or repair of goods." TEX.BUS. & COM.CODE ANN. § 17.45(2). The Amarillo court distinguished two types of "services" actionable under the DTPA, citing *Rickey v. Houston Health Club, Inc.*, 863 S.W.2d 148 (Tex.App.—Texarkana 1993), *writ denied, improvidently granted*, 888 S.W.2d 812 (Tex. 1994). *Henry*, 891 S.W.2d at 794. First, there are services "purchased or leased for use," where the service is clearly the objective of the bargain. *Id.* at 796. Thus, as in the *Rickey* case, the purchaser of a health club membership was a "consumer" under the DTPA because he had purchased a "service," *i.e.*, the use of the club's facilities.[3]

Second, there are "services furnished in connection with the sale or repair of goods." *Id.* These "services" are not necessarily the principal purpose of the bargain between buyer and seller. *Id.* "Rather, the goods themselves are the primary benefit to be obtained as a result of the transaction and the services are merely collateral to that end." *Id.* Examples of these collateral "services" are, according to the court, warranties or maintenance obligations accompanying the purchase of the goods. *Id.* Although "collateral," these services must be directly, and

3. In *Rickey*, the plaintiff fell and injured himself on a health club's jogging track. *Rickey v. Houston Health Club, Inc.*, 863 S.W.2d 148 (Tex. App.—Texarkana 1993), *writ denied, improvidently granted*, 888 S.W.2d 812 (Tex.1994). He brought a DTPA action against the health club asserting that he was a consumer under the DTPA because he had purchased a "service," *i.e.*, use of the facilities. 863 S.W.2d at 151. He alleged that the club had misrepresented the quality of its jogging track. *Id.* The Texarkana court held that the use of the facilities was the service Rickey actually had purchased, and therefore he was a buyer of "services" within the DTPA definition. *Id.*

not incidently, related to the sale of the goods. *Id.* The court in *Henry* found that use of the floor was "incidental" and thus not within the DTPA definition of "services" giving rise to a cause of action under the statute. *Id.*

We believe the facts here closely resemble those in *Henry.*[4] Ramirez bases her DTPA action on the claim that HEB, as a store open to the public, made the "false, misleading and deceptive" representation that its products were displayed and stocked in a safe manner. Ramirez' "use" of the store was incidental to her purchase of goods as a matter of law. *See id.* Having failed to satisfy the second prong of the "consumer" test, we find that the court did not err in directing a verdict for HEB on Ramirez' DTPA claim. We overrule point five.

■ Ramirez' sixth point asserts that the court erred in allowing Laura Urquiza to give expert opinion testimony. She complains of the following exchange:

[HEB]: In your opinion, does HEB—is HEB safe when it stocks merchandise up on the risers?

[RAMIREZ]: Objection, Your Honor, this calls for an opinion which this witness is not qualified to give.

[COURT]: Overruled.

[URQUIZA]: Could you repeat the question, please?

[HEB]: Sure. Is it safe for HEB to stock merchandise up on risers like that?

[URQUIZA]: Yes, it is.

[HEB]: Is there anything unreasonable about stocking merchandise like that?

[URQUIZA]: No, there is not.

■ Prior to this exchange, Urquiza had testified that she had been an assistant store director for the HEB store in Ennis and was then a store director.

[HEB]: Have you been to other stores, where you've seen merchandise stocked on risers?

[URQUIZA]: I have.

[HEB]: Is it the custom and practice in the industry to stock merchandise on risers?

[URQUIZA]: Yes, it is.

[HEB]: Is there anything unsafe about stocking merchandise, *like trash cans,* on risers?

[URQUIZA]: No, there isn't, there's not anything unsafe.

(Emphasis added). Thus, Urquiza had testified without objection that there was nothing unsafe about stocking merchandise, such as trash cans, on risers. Ramirez' objection to Urquiza's later testimony was untimely, because Urquiza had already testified to the same matter. *See* TEX.R.APP.P. 52(a). A party waives any complaint regarding a ruling on admissibility of evidence if the objection was made after the admission of the evidence or if testimony to the same effect has previously been admitted without objection. *Atlantic Richfield Co. v. Misty Prod., Inc.,* 820 S.W.2d 414, 421 (Tex.App.—Houston [14th Dist.] 1991, writ denied). We overrule point six.

We affirm the judgment.

4. Ramirez cites *Allied Towing Serv. v. Mitchell,* 833 S.W.2d 577 (Tex.App.—Dallas 1992, no writ), for the proposition that even an involuntary acquisition of goods or services is enough to make a party a consumer under the DTPA. In *Allied Towing,* Mitchell parked his car in the parking lot of a billiard hall. A sign posted in the parking lot stated that patrons of the billiard hall would not be towed. Allied's name and phone number were on the sign. Mitchell patronized the billiard hall, yet Allied Towing towed his automobile. Mitchell sued Allied under the DTPA for negligent misrepresentation. The court of appeals affirmed the jury's finding of DTPA liability. We do not find the facts of *Allied* controlling.