COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-09-065-CV

 

 

TERRY HENRY, CLARENCE M.                                               APPELLANTS

HENRY, AND ONETA HENRY                                                                 

 

                                                   V.

 

CITY OF FORT WORTH, TEXAS,                                            APPELLEES

FW SPORTS AUTHORITY, INC., 

AND TEXAS MOTOR SPEEDWAY, INC.                                                   

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

In
various issues that they have briefed together, appellants Terry Henry,
Clarence M. Henry, and Oneta Henry appeal the trial court=s AFinal
Judgment and Permanent Injunction.@[2]  We affirm.








Background Facts

Appellee
FW Sports Authority, Inc. (FWSA) owns a tract of land that it leases to
appellee Texas Motor Speedway, Inc. (TMS). 
Appellants own three tracts of land near FWSA=s
tract.  Appellants filed a lawsuit
against appellees because of appellees= alleged
attempts and threats, through various asserted acts, to interfere with
appellants= rights to use their property
and an easement in the manner that they wanted to.  TMS filed a counterclaim against appellants,
asking for a declaratory judgment stating that appellants did not have a right
to place signs on FWSA=s land and did not have a right
to use the land other than for ingress and egress.  Later, TMS and appellee City of Fort Worth,
Texas (the City) requested a temporary injunction against appellants concerning
the same subjects.








In
September 2006, appellants voluntarily dismissed all of their claims against
appellees.  However, TMS and the City
continued to seek further injunctive remedies against appellants, alleging in
April 2008 that appellants were trespassing on FWSA=s
property and violating the City=s sign
ordinance. Later that same month, the trial court allowed appellants= counsel
to withdraw, ordered that appellants could not amend their pleadings to add new
claims or defenses, and set July 14, 2008 as the trial date.

On the
day of trial, appellees= counsel and Terry (acting pro
se) appeared, but Terry=s parents, Clarence and Oneta,
did not appear.  Appellees= counsel
told the court that the parties had reached a settlement.  He presented the terms of the settlement to
the court by filing an unsigned document entitled ACOMPROMISE
AND SETTLEMENT AGREEMENT.@ 
That document, among other things, required appellants to execute a
quitclaim deed, a restrictive covenant, and an agreed permanent injunction.  The proposed deed, covenant, and injunction
were attached to the unsigned settlement agreement.

In
November 2008, TMS filed a motion to enter judgment based on what had occurred
on July 14.  In response, appellants, who
were represented by new counsel, filed a motion to reopen the case as an active
case on the court=s docket and filed a response to
TMS=s motion
to enter judgment.  Appellants= motion
to reopen asked the court to find that the Apurported
oral and unsigned written settlement agreement@ was
ineffective because, among other reasons, the agreement did not comply with the
rules of civil procedure.  Appellants=
response to TMS=s motion alleged that appellants
had withdrawn their consent to the settlement and that the trial court could
not therefore render a judgment related to it.








In
February 2009, the trial court signed a final judgment that recited that the
parties had validly completed a settlement agreement or that, alternatively,
Clarence and Oneta failed to appear at trial and a default judgment was
appropriate.[3]  The written judgment recited that the trial
court rendered judgment on July 14, 2008, and it attached documents related to
the property at issue.  Appellants filed
their notice of appeal.

The Parties=
Settlement Agreement








Appellants
first contend that the trial court erroneously signed its written judgment
against them because they are not bound to the agreement announced by Terry and
appellees= counsel during the July 2008
hearing. They argue that (1) Terry did not have authority to bind Clarence
and Oneta to the agreement because he is not a lawyer and because the record
does not establish that he is their agent; (2) the ACOMPROMISE
AND SETTLEMENT AGREEMENT,@ although filed, was not signed
by anyone and therefore does not comply with the rules of civil procedure; and
(3) the trial court did not render judgment during the July 2008 hearing,
and appellants therefore effectively withdrew their consent to the settlement
agreement.

Terry=s
authority to bind Clarence and Oneta

Terry
testified during the July 2008 hearing that he had spoken to his parents about
the settlement agreement=s specific terms and that he had
the authority to enter the agreement and execute documents related to the
agreement on their behalf.  In the trial
court, appellants never objected to nor argued at any timeCthrough
any formal pleading, verified response, or otherwiseC that
Terry did not have the authority to bind Clarence and Oneta to the settlement
agreement.  See, e.g., Tex. R.
Civ. P. 93, 94.  When we questioned
appellants= counsel during oral argument
about whether he was challenging Terry=s authority
to bind Clarence and Oneta for the first time on appeal, he stated, AThat=s what
the record reflects.@








To
preserve a complaint for appellate review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling, if they are not apparent from the context of
the request, objection, or motion.  Tex.
R. App. P. 33.1(a).  If a party fails to
do this, error is not preserved, and the complaint is waived.  See Bushell v. Dean, 803 S.W.2d 711,
712 (Tex. 1991) (op. on reh=g).  The objecting party must get an express or
implied ruling from the trial court. 
Tex. R. App. P. 33.1(a)(2), (b); Frazier v. Yu, 987 S.W.2d 607,
610 (Tex. App.CFort Worth 1999, pet.
denied).  Courts have applied the
preservation requirement of rule 33.1(a) to matters of capacity, agency, and
settlement authority.  See HCRA
of Tex., Inc. v. Johnston, 178 S.W.3d 861, 866 (Tex. App.CFort
Worth 2005, no pet.); see also In re Credit Suisse First Boston
Mortgage Capital, L.L.C., 257 S.W.3d 486, 493 (Tex. App.CHouston
[14th Dist.] 2008, orig. proceeding [mand. denied]); P & S Corp. v. Park,
No. 14‑05‑00115‑CV, 2006 WL 1168804, at *4 (Tex. App.CHouston
[14th Dist.] May 4, 2006, no pet.) (mem. op.).

Because
appellants did not contend in the trial court that Terry lacked authorityCas a
nonlawyer or otherwiseCto bind Clarence and Oneta to
the settlement agreement, we hold that they have not preserved that argument
for appeal, and we overrule that portion of their argument.[4]

The parties=
compliance with the rules of civil procedure








Appellants
also assert that because the filed settlement document in this case is
unsigned, the parties= settlement is unenforceable for
failing to comply with the rules of civil procedure.  Rule 11 provides, AUnless
otherwise provided in these rules, no agreement between attorneys or parties
touching any suit pending will be enforced unless it be in writing, signed and
filed with the papers as part of the record, or unless it be made in open
court and entered of record.@ Tex. R.
Civ. P. 11 (emphasis added); see Scott‑Richter v. Taffarello, 186
S.W.3d 182, 189 (Tex. App.CFort
Worth 2006, pet. denied); City of Roanoke v. Town of Westlake, 111
S.W.3d 617, 626 (Tex. App.CFort
Worth 2003, pet. denied) (AThe
supreme court has superimposed the requirements of Rule 11 on all settlement
agreements in pending suits.@).
The rationale of rule 11 is that 

[a]greements of counsel, respecting the disposition of causes, which
are merely verbal, are very liable to be misconstrued or forgotten, and to
beget misunderstandings and controversies; and hence there is great propriety
in the rule which requires that all agreements of counsel respecting their
causes shall be in writing, and if not, the court will not enforce them.  They will then speak for themselves, and the
court can judge of their import, and proceed to act upon them with safety.

 

Padilla v. LaFrance, 907
S.W.2d 454, 460 (Tex. 1995) (quoting Birdwell v. Cox, 18 Tex. 535, 537
(1857)).  In other words, the rule
attempts to avoid Adisputes over the terms of oral
settlement agreements.@ 
Id. at 461.

Appellants
principally rely on the Texarkana Court of Appeals=s
opinion in Songer v. Archer to argue that the parties=
agreement in this case did not comply with rule 11.  23 S.W.3d 139 (Tex. App.CTexarkana
2000, no pet.).








In Songer, the Texarkana
court held that an unsigned written agreement that had been sent between the
parties=
attorneys and Amentioned in court@ was not
enforceable under rule 11 and that the only part of the parties=
agreement that was enforceable comprised the parties= verbal
representations in open court. Id. at 141.  

In this
case, the following exchange occurred between one of appellees=
attorneys and Terry:

Q      Mr. Henry, on page three
here, during earlier negotiations, we struck through a portion of [the unsigned
settlement agreement regarding payment]. 
But as part of settling this case today, you have agreed to pay $6,000 .
. .; correct?

 

A      Yes.

 

Q      And you are here also to
make that obligation jointly and severally on behalf of [Clarence and Oneta]?

 

A      Yes.

 

Q      In regards to entering
into the compromise settlement agreement and other exhibits attached to exhibit
one, do you have the authority on behalf of your parents to enter into this
agreement?

 

A      Yes, I do.

 

Q      You have spoken to them
specifically about the document and the obligations that they create; correct?

 

A      Yes.








Q      And you have agreed and
are here with authority on their behalf to agree to execute all of the
documents included in [the unsigned settlement agreement] within two weeks of
today=s date; correct?

 

A      Yes.  [Emphasis added.]

 

After this exchange occurred,
Terry affirmed his understanding of specific portions of the unsigned
agreement, and the trial court designated the unsigned agreement to be filed
with the district clerk and said that it would consider the unsigned agreement Aas
evidence of the settlement.@








Thus,
this case differs from Songer because the unsigned document here was not
merely Amentioned
in court@; it was
filed and validated on the record by the parties as part of the
settlement.  Our case is more akin to Stein
v. American Residential Management, Inc., in which the Houston [Fourteenth]
Court of Appeals held that an unsigned written agreement complied with rule 11
because it was admitted as evidence without objection at trial and, as the
trial court stated, A[T]he existence of the agreement
was well known and was fully and openly discussed.@  781 S.W.2d 385, 386B87 (Tex.
App.CHouston
[14th Dist.] 1989), writ denied, 793 S.W.2d 1 (1990)); see also Rich
v. Rich, No. 01‑03‑00078‑CV, 2003 WL 21027940, at *2
(Tex. App.CHouston [1st Dist.] May 8, 2003,
no pet.) (mem. op.) (holding that a divorce decree qualified as a contract
under rule 11 even though neither party signed it because the decree was
transcribed in open court by a court reporter).

Like the
court in Stein, we hold that the parties= written
agreement here, although unsigned, serves as the basis for a valid settlement
agreement under rule 11 because it was nonetheless Amade in
open court and entered of record.@ See
Tex. R. Civ. P. 11; Stein, 781 S.W.2d at 387 (relying on the open court
provision of rule 11 to hold that the unsigned agreement satisfied the rule).
We note that in the context of this case, appellants=
argumentCthat the
settlement agreement should be restricted Asolely
[to] the testimony in open court@ and
should not include the detailed, written provisions that the parties recognized
and understood in open courtCwould
frustrate the purpose of rule 11 to restrict disputes over the terms of oral
settlement agreements.  See Padilla,
907 S.W.2d at 461.  For these reasons, we
overrule the part of appellants=
argument that focuses on the settlement agreement=s
alleged noncompliance with rule 11.

Appellants= attempt
to revoke consent to the settlement agreement








Next,
appellants contend that they timely revoked their consent to the settlement
agreement and that the trial court=s
judgment based on the agreement was therefore improper.  They argue that although Terry agreed to the
settlement=s terms, he did not expressly
agree to a judgment=s entry during the July 2008
hearing and that appellees were therefore required to file an independent
breach of contract claim to enforce the agreement.

 A rule 11 settlement agreement may not serve
as the basis for an agreed judgment if a party withdraws its consent before the
trial court has rendered judgment.  Padilla, 907 S.W.2d at 461B62;
see Mantas v. Fifth Court of Appeals, 925 S.W.2d 656, 658 (Tex. 1996)
(orig. proceeding) (explaining that when a party revokes its consent to a rule
11 agreement before rendition occurs, the party seeking enforcement of the
agreement must Apursue a separate breach‑of‑contract
claim, which is subject to the normal rules of pleading and proof@);
Kennedy v. Hyde, 682 S.W.2d 525, 528 (Tex. 1984) (stating that Aconsent
must exist at the time an agreed judgment is rendered@).  However, once the trial court renders
judgment based on a rule 11 settlement agreement, the parties cannot revoke
their consent to the agreement.  Alcantar
v. Okla. Nat=l Bank, 47
S.W.3d 815, 821 (Tex. App.CFort
Worth 2001, no pet.); see St. Raphael Med. Clinic, Inc. v. Mint Med.
Physician Staffing, LP, 244 S.W.3d 436, 441 (Tex. App.CHouston
[1st Dist.] 2007, no pet.); Woods v. Woods, 167 S.W.3d 932, 933 (Tex.
App.CAmarillo
2005, no pet.).








Judgment
is Arendered@ when
the trial court officially announces its decision on the matter submitted to it
in open court or by written memorandum filed with the clerk.[5]
 S & A Rest. Corp. v. Leal,
892 S.W.2d 855, 857 (Tex. 1995) (noting that Aapproval
of a settlement does not necessarily constitute rendition of judgment@); Cook
v. Cook, 243 S.W.3d 800, 801 (Tex. App.CFort
Worth 2007, no pet.); Alcantar, 47 S.W.3d at 821.  As the Amarillo Court of Appeals has
explained, 

The rendition of the trial court=s decision, whether in open court or by official
document of the court, is the critical moment when the judgment becomes
effective.  The subsequent reduction of
the rendered judgment to writing is typically carried out by the party favored
by the judgment.  The signature of the
trial court upon the writing is merely a ministerial act of the court . . . .

 








Henry v. Cullum Cos., 891
S.W.2d 789, 792 (Tex. App.CAmarillo
1995, writ denied); see also In re K.N.M., No. 02‑08‑00308‑CV,
2009 WL 2196125, at *5B6 (Tex. App.CFort
Worth July 23, 2009, no pet.) (mem. op.) (quoting Henry).  To qualify for rendition, the words spoken or
written by the trial court must evince a present act that effectively decides
the issues before the court. S & A Rest. Corp., 892 S.W.2d at 858; Cook,
243 S.W.3d at 801.  In other words, the
trial court=s words must Aclearly
indicate the intent to render judgment at the time the words are expressed.@  S & A Rest. Corp., 892 S.W.2d at
858.  But what the trial court believes
to be the legal effect of its act is not dispositive.  Id. 

Here, on
the date set for trial, appellees told the court that the parties had reached a
settlement and indicated that certain terms of the settlement would be
performed in the future.[6]  Terry expressed his understanding that the
agreement released all claims asserted by all parties against each other; the
record does not reflect any claims that were left open for resolution.  Near the end of the hearing concerning the
settlement, the trial court set a deadline for the entry of the judgment and
for Aeverything
. . . to be finalized . . . [and] signed off.@  The trial court said, AIf those
things don=t happen, we are going to show
back up here on [August] 21st to enter that agreement as the judgment.@  Then, the trial court concluded the hearing
by stating, AAll right. I appreciate
everybody=s hard work on this, and I will
approve the agreement and render it as an order of the court this day.@  [Emphasis added.]








We hold
that the trial court=s specific words of rendition
show its present intent to orally render judgment on the parties=
agreement and that its statements about future acts show only its intent to
sign the written memorialization of its rendition and to allow performance of
the judgment at a later date.[7]  Cf. Samples Exterminators v. Samples,
640 S.W.2d 873, 874 (Tex. 1982) (holding that the trial court rendered judgment
when it said, A[T]he Court approves the
settlement made in open court and orders all parties to sign any and all papers
necessary to carry out this agreement and to carry out the agreement that was
made and dictated into the record@); Patel
v. Eagle Pass Pediatric Health Clinic, Inc., 985 S.W.2d 249, 252 (Tex. App.CCorpus
Christi 1999, no pet.) (holding that the trial court rendered judgment when it
said, ASettlement
is approved and ordered.  Mr. Rhodes, . .
. you draft the order, circulate it, and let=s have
it within five working days@); Galerie
D=Tile,
Inc. v. Shinn, 792 S.W.2d 792, 794 (Tex. App.CHouston
[14th Dist.] 1990, no writ) (explaining that when the trial court intends to
render, it is Apreferable for the trial judge
to use the specific word >render=@); see
also K.N.M., 2009 WL 2196125, at *6 (holding that the trial court rendered
judgment when it said, A[T]he court will approve the
agreements as they have been stated for the record, and I will make it the
written order of the court when it is submitted@).








Because
we hold that the trial court rendered judgment at the end of the parties=
settlement announcement, we also hold that appellants could not later revoke
their consent to the settlement agreement and that the trial court did not err
by signing the judgment that was based on the agreement=s terms.  See Alcantar, 47 S.W.3d at 821; Henry,
891 S.W.2d at 792.  We overrule this
portion of appellants= argument.[8]

The Particular Terms of
the Judgment

 

The language of the injunction and restrictive covenant and the award
of attorney=s fees

 

Appellants
further contend that the trial court=s final
judgment that contains a permanent injunction and a restrictive covenant is too
broad because it prohibits them from using the disputed land in certain ways
and from applying for permits under city ordinances to do so.  They also challenge the trial court=s award
of attorney=s fees to TMS.

The
portion of the trial court=s
judgment that concerns the permanent injunction states,








IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that [appellants] . . .
are hereby, immediately restrained from:

 

1) Placing any sign, banner, or other
advertisement, whether temporary, permanent or hand held, on the Property owned
by FW Sports Authority, Inc. and leased by TMS . . .[,] and

 

2) Making any use of the Property . . . other
than ingress and egress to and from [appellants=] property . . . .

 

These provisions substantially
reflect the terms of the permanent injunction that the parties agreed to during
the settlement hearing.  Terry indicated
that he understood that the injunction was included as part of the
agreement.  The restrictive covenant
that is contained in the judgment, which concerns appellants=
prohibition from using their land for sexually oriented businesses, exactly
matches the restrictive covenant that was part of the parties=
settlement agreement.[9]  Likewise, although appellants challenge the
trial court=s award of $6,000 in attorney=s fees
to TMS,[10]
Terry specifically agreed during the settlement hearing that he and his parents
would pay $6,000 to TMS at its attorney=s office
within thirty days of the hearing.








Because
these specifically challenged provisions are based on the parties=
settlement agreement that the trial court orally rendered as its judgment, we
hold that the trial court did not err by including them in its written
judgment.  See Samples, 640 S.W.2d
at 874B75 (affirming
the trial court=s grant of injunctive relief
based on a settlement agreement because a party=s
attempted revocation of the agreement occurred after the trial court rendered
judgment); Alcantar, 47 S.W.3d at 821 (stating that once the trial court
renders judgment based on the parties=
settlement agreement, the parties cannot revoke their consent to the
agreement); see also Ysasaga v. Nationwide Mut. Ins. Co., 279 S.W.3d
858, 864 (Tex. App.CDallas 2009, pet. denied)
(holding that a party waived the right to complain about an order that it
agreed to); Boufaissal v. Boufaissal, 251 S.W.3d 160, 162 (Tex. App.CDallas
2008, no pet.) (stating that Aa party
will not be allowed to complain on appeal of an action or ruling which she
invited or induced@).  Thus, we also overrule this part of
appellants= argument.

The documents attached to the
final judgment













Finally,
in one page of appellants= brief, they appear to complain
(without citing relevant legal authority) about the final judgment=s
attachment of documents describing the property at issue because the documents
were not attached to (although they were referenced in) the unsigned settlement
agreement.[11]  But appellants did not assert error in the
trial court related to the judgment=s
attachment of descriptive property documents that were not attached to the
unsigned settlement agreement. 
Appellants have also not contended at trial or on appeal that the
judgment=s
attached documents incorrectly reflect the property that is subject to the
parties=
settlement.  Thus, we hold that
appellants have waived any error concerning the attachment of documents to the
judgment that were not attached to the unsigned settlement agreement.  See Tex. R. App. P. 33.1(a); Dal‑Chrome
Co. v. Brenntag Sw., Inc., 183 S.W.3d 133, 144 (Tex. App.CDallas
2006, no pet.) (explaining that to @preserve
a complaint of error in a judgment, a party must inform the trial court of its
objection by a motion to amend or correct the judgment, a motion for new trial,
or some other similar method@); see
also Murphy v. Leveille, No. 02‑08‑00130‑CV, 2009 WL
2619857, at *1B2 (Tex. App.CFort
Worth Aug. 26, 2009, no pet.) (mem. op.) (holding that the appellant waived
issues concerning the differences between a judgment and a settlement agreement
because the appellant did not assert the differences in the trial court).  We overrule this final portion of
appellants= argument.

Conclusion

Having
overruled all of appellants=
contentions, we affirm the trial court=s
judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON and WALKER,
JJ.

 

DELIVERED:  February 18, 2010











[1]See Tex. R. App. P. 47.4.





[2]Appellants initially list
thirteen AIssues Presented,@ but the remainder of
their brief does not segregate its discussion of those issues; instead, the
majority of appellants= brief combines a
discussion of several contentions about alleged errors in the entry and
substance of the trial court=s judgment. 
We will address appellants= assertions that appear in the argument portion
of their brief rather than particularly addressing the thirteen AIssues Presented.@ 





[3]Some of the parties= briefing concerns
whether appellees met the requirements for a default judgment, but we will not
address that issue because we conclude that the parties= settlement agreement
supports the trial court=s judgment.  See Tex. R. App. P. 47.1; Hawkins
v. Walker, 233 S.W.3d 380, 395 n.47 (Tex. App.CFort Worth 2007, pet.
denied).





[4]We decide this issue on a
procedural preservation basis only; we do not express any substantive opinion
on whether a pro se party may bind other pro se parties to a settlement
agreement through an oral representation of settlement authority.





[5]A judgment routinely goes
through three stages:  rendition,
signing, and entry.  Wittau v. Storie,
145 S.W.3d 732, 735 (Tex. App.CFort Worth 2004, no pet.).





[6]Terry and his parents
were to execute documents attached to the unsigned written settlement agreement
within two weeks, and they were to pay TMS $6,000 within thirty days.  





[7]We also note that the
trial court=s docket notes from the
date of the settlement hearing relate, ASettlement proved up on recordCapproved by the court and
rendered.  Entry on or before
8-21-08.@  [Emphasis added.]





[8]Appellants also contend
in their brief, AThe Reporter=s Record does not show
that Terry Henry agreed to any injunction.@  But Terry
agreed to execute all documents included in the unsigned settlement agreement,
and an AAgreed Final Judgment
Granting Permanent Injunction@ was one of those documents. Appellees= counsel also questioned
Terry specifically about the terms of the injunction, and Terry agreed that he
understood it.





[9]Terry specifically agreed
to be bound by the restrictive covenant when he testified.





[10]Appellants do not
challenge the judgment=s inclusion of
postjudgment interest or court costs.





[11]For example, appellants
complain about the judgment=s attachment of a metes and bounds description of
a 6.374-acre tract and a warranty deed containing a metes and bounds
description of the land subject to appellants= restrictive
covenant.  In their brief, appellants
acknowledge that the A6.374 acre tract is the
[FWSA] tract,@ and they also
acknowledge that the warranty deed that is attached to the judgment is A[t]he Terry Henry deed.@  We will accept these facts as stated.  See Tex. R. App. P. 38.1(g).  Appellants attached one of these documents as
an exhibit to one of their motions at trial and have attached the same document
to their brief.  Also, Terry expressed
his general understanding of the property involved in the quitclaim deed,
restrictive covenant, and permanent injunction during the July 2008 hearing.