ST. RAPHAEL MEDICAL CLINIC,
INC., Appellant

v.

MINT MEDICAL PHYSICIAN
STAFFING, LP d/b/a Prime
Staff, Appellee.

No. 01–06–00983–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 25, 2007.

Michael C. Donovan, Houston, TX, for Appellant.

Don M. Barnett, Matias E. Garcia, Barnett & Garcia PLLC, Austin, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

TERRY JENNINGS, Justice.

Appellant, St. Raphael Medical Clinic, Inc. ("St. Raphael"), challenges the trial court's judgment entered in favor of appellee, Mint Medical Physician Staffing, LP doing business as Prime Staff ("Prime Staff"), in Prime Staff's suit against St. Raphael for damages based on a sworn account, breach of contract, and quantum meruit. In three issues, St. Raphael contends that (1) this Court lacks jurisdiction over the appeal as the trial court's judg-

ment did not dispose of Prime Staff's claim for attorney's fees; (2) the trial court erred in entering judgment after St. Raphael had revoked its consent to the entry of the agreed judgment; and (3) the trial court denied St. Raphael due process of law in not conducting a hearing or trial on Prime Staff's request for entry of judgment.

We reverse and remand.[1]

### Factual and Procedural Background

In its first amended original petition, filed on January 25, 2005, Prime Staff sought $5,688.48 in damages, prejudgment and postjudgment interest, costs of court, and attorney's fees.[2] On September 13, 2005, Prime Staff and St. Raphael subsequently entered into a settlement agreement (the "Agreement").

In the Agreement, the parties stated their intent to "effect the extinguishment of all obligations and controversies that exist between them as hereinafter designated." They also stated their "desire to compromise and settle all claims concerning the Invoices and the underlying litigation, and intend that the full terms and conditions be set forth in this Agreement." St. Raphael agreed to pay Prime Staff installments totaling $5,000 "in full and final settlement of all disputes between the parties regarding the Invoices and this lawsuit." The Agreement additionally provided:

As security for such payments, [St. Raphael] agrees to execute an Agreed Judgment against [St. Raphael] in favor

of [Prime Staff] in the amount of $16,095.12 less any amounts paid on this [Agreement]. [Prime Staff] agrees that it will not file, abstract[,] or execute upon the Agreed Judgment as long as the above-described payments are timely made.

It also provided that "[s]ubject to compliance with the terms of this Agreement, [Prime Staff] releases and forever discharges [St. Rafael] ... for all matters and claims for relief related in any way to the causes of action brought in the above-referenced suit...."

Following the settlement, the trial court, on May 31, 2006, dismissed the case for want of prosecution. On June 9, 2006, Prime Staff filed a verified motion to reinstate, attaching a copy of the Agreement, a copy of the agreed judgment, and an affidavit concerning St. Raphael's default on making the required payments. On June 22, 2006, the trial court granted Prime Staff's motion.

On July 7, 2006, Prime Staff filed the previously agreed to judgment with the trial court for its approval and entry. However, also on July 7, 2006, St. Raphael filed its "Revocation of Consent to Agreed Judgment and Objections to Plaintiff's Proposed Agreed Judgment" with the trial court. In this pleading, St. Raphael revoked its consent to the agreed judgment and alleged that it was not in default of the Agreement.

On July 12, 2006, the trial court entered the agreed judgment, ordering St. Raphael to pay $16,095.12 "less any amounts previ-

---

1. Although St. Raphael untimely filed its notice of appeal, it did file its notice of appeal within the fifteen-day period in which parties may file a motion to extend time to file a notice of appeal. Tex.R.App. P. 26.3. St. Raphael also timely filed its motion to extend time to file a notice of appeal. *Id.* Included in this motion was a reasonable explanation

for the late filing of the notice of appeal, which we accepted. Tex.R.App. P. 10.5(b); *see Jones v. City of Houston,* 976 S.W.2d 676, 677 (Tex.1998). Therefore, we have jurisdiction over this appeal.

2. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 38.001–.002 (Vernon 1997).

ously paid in this cause, or in other words, judgment for the total amount of $13,095.12 with interest thereon at the rate of 8.25 percent (8.25%) per annum on the entire judgment from the date said judgment is signed until such judgment is fully and finally paid." The agreed judgment also recites "that the parties have requested the Court to enter judgment based upon that Agreement. The Court is of the opinion that a judgment in accordance with the parties' agreement should be entered and it is accordingly" decreed that judgment is in favor of Prime Staff. The judgment finally provides, "It is further ORDERED, ADJUDGED and DECREED that [PRIME STAFF] is allowed such writs and processes as may be necessary in the enforcement and collection of this judgment. Costs of court are taxed to [St. Raphael]."

On August 11, 2006, St. Raphael filed a motion for new trial, asserting that it had given prior notice to the trial court and Prime Staff that it had "revoked its consent to the purportedly agreed judgment" entered by the trial court, and that "[s]uch notice was filed with the [trial court] and served on [Prime Staff] prior to the entry of the judgment." The motion was overruled by operation of law.

## Jurisdiction

In its first issue, St. Raphael argues that this Court lacks jurisdiction over the appeal because the trial court's judgment failed to dispose of Prime Staff's claim for attorney's fees.

■■■ The general rule, with mostly statutory exceptions, is that an appeal may be taken only from a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). A judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties. *Id.* at 192–93. Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case. *Id.* at 195. A judgment that fails to dispose of a claim for attorney's fees may prevent it from being final and appealable. *See McNally v. Guevara*, 52 S.W.3d 195, 195–96 (Tex.2001); *see also In re K.M.B.*, 148 S.W.3d 618, 620–21 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (stating that order's failure to address attorney's fees precluded it from being final judgment).

■■■ However, an agreed judgment is a final judgment on the merits. *In re J.G.W.*, 54 S.W.3d 826, 832 (Tex.App.-Texarkana 2001, no pet.). The agreement is no longer a contract among private individuals but a judgment of the court. *Ex Parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979). An agreed judgment "has neither less nor greater force or effect than it would have had [if] it [had] been rendered after litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000). The judgment "must be in strict or literal compliance" with the terms of the settlement agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex.1976).

■■■ Thus, an agreed judgment is interpreted in the same manner as a contract. *Gulf Ins. Co.*, 22 S.W.3d at 422. A subsequent failure to perform a condition in the agreed judgment does not invalidate the judgment. *Hawkins v. Howard*, 97 S.W.3d 676, 678 (Tex.App.-Dallas 2003, no pet.); *Blum v. Mott*, 664 S.W.2d 741, 745

(Tex.App.-Houston [1st Dist.] 1983, no writ). The agreed judgment's validity and correctness "is not called into question by a subsequent breach because the breach did not occur until after the judgment was signed." *Hawkins,* 97 S.W.3d at 678. Therefore, "[a]lthough breach of the settlement agreement may give rise to new claims between the parties, it does not affect the correctness of the judgment at the time it was rendered." *Id.* On the other hand, res judicata applies to an agreed judgment and is thus "conclusive on the matters actually raised and litigated and on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation." *Jistel v. Tiffany Trail Owners Ass'n,* 215 S.W.3d 474, 480 (Tex.App.-Eastland 2006, no pet.).

▪ Citing *McNally,* appellant first asserts that "[t]he judgment does not expressly address and dispose of [St. Raphael's] claim for attorney's fees." *See* 52 S.W.3d at 196. In *McNally,* the plaintiff sued the defendants over an easement issue, and the defendants moved for summary judgment on the issue and counterclaimed for attorney's fees. *Id.* at 195. The trial court granted the defendants' summary judgment on the easement issue and purported to issue a final judgment, even though the order failed to address attorney's fees. *Id.* at 195–96. The Texas Supreme Court held that the trial court erred because "[n]othing in the trial court's judgment, other than its award of costs to the defendants, suggests that it intended to deny the defendants' claim for attorney fees. The award of costs, by itself, does not make the judgment final." *Id.* at 196.

In its live pleading at the time the judgment was entered, Prime Staff sought attorney's fees from St. Raphael. However, the Agreement between Prime Staff and St. Raphael provides that St. Raphael agreed to pay installments totaling $5,000 *"in full and final settlement of all disputes* between the parties regarding the Invoices and this lawsuit." (Emphasis added.) In the Agreement, the parties expressed their intent "to effect the extinguishment of all obligations and controversies that exist between them as hereinafter designated," their "desire to compromise and settle all claims concerning the Invoices and the underlying litigation," and their intent that "the full terms and conditions be set forth in this Agreement."

The previously agreed to judgment provided "that the parties have requested the Court to enter judgment based upon that Agreement. The Court is of the opinion that a judgment in accordance with the parties' agreement should be entered and it is accordingly" decreed. The agreed judgment, executed as security for the settlement payments, also awarded post-judgment interest.

Here, although Prime Staff's claim for attorney's fees is not explicitly mentioned in either the Agreement or the agreed judgment, it is clear that the intention of the parties was that the agreed judgment, which incorporated the Agreement, was intended to dispose of all claims included in Prime Staff's petition, including its claim for attorney's fees. The instant case is also distinguishable from *McNally* because *McNally* involved an order purporting to be a final judgment that granted a summary judgment which disposed of one issue, yet completely failed to address the only other issue of attorney's fees. *Id.* The trial court here rendered an agreed judgment, which "is conclusive, not only on the matters actually raised and litigated, but it is also conclusive on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter." *In re*

*J.G.W.,* 54 S.W.3d at 832; *Bell v. Moores,* 832 S.W.2d 749, 755 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

▉ The Agreement also provides that "[s]ubject to compliance with the terms of this Agreement, [Prime Staff] releases and forever discharges [St. Rafael] ... for all matters and claims for relief related in any way to the causes of action brought in the above-referenced suit...." In its reply brief, St. Raphael asserts that this clause precludes a final judgment:

> According to [Prime Staff], [St. Rafael] had failed to comply with the settlement agreement.... Therefore, according to [Prime Staff] based on the portion of the agreement it relies upon and quotes [above] ... its suit against [St. Rafael] [is] no longer released, discharged, or settled. Such matters and claims would, of course, include [Prime Staff's] claim for attorney's fees in its first amended petition, [Prime Staff's] live pleading before the trial court at the time of entry of judgment.

However, this does not affect the finality of the agreed judgment. *Compare Jistel,* 215 S.W.3d at 480 (stating that res judicata is applicable to agreed judgments), *with Hawkins,* 97 S.W.3d at 678 (stating that "breach of the settlement agreement may give rise to new claims between the parties, [but] it does not affect the correctness of the judgment at the time it was rendered"). The previously agreed to judgment was in fact, by its own terms, executed as security for the settlement payments.

Accordingly, we hold that the judgment is a final and appealable judgment and

that we have jurisdiction over the instant appeal.

We overrule St. Raphael's first issue.

### Revocation of Consent

▉ In its second issue, St. Raphael argues that the trial court erred in entering the previously agreed to judgment because St. Raphael had revoked its consent to the judgment prior to the court's signing it. Prime Staff argues that the trial court properly entered the previously agreed to judgment because, even though St. Rafael filed a revocation of consent with the trial court before it rendered judgment, "[St. Rafael] did not request an immediate or emergency hearing and did not bring to the court's attention that it objected to the agreed judgment that was being forwarded to the court for approval." Prime Staff contends that "[a] trial court should not be required to review the contents of the court's file ... to determine if an agreed judgment previously approved by the parties is now being contested or revoked." Prime Staff also asserts that St. Rafael should not be permitted to "sand bag" the trial court with a last-minute filing. Prime Staff emphasizes that, here, the trial court "had no actual knowledge that [St. Raphael] had revoked consent and was objecting to entry of the agreed judgment prior to the signing of the final judgment." [3]

▉ It is well-settled law that a party may revoke its consent to a settlement agreement at any time before the court renders judgment on the agreement. *Padilla v. LaFrance,* 907 S.W.2d 454, 461 (Tex.1995) ("[C]ourt cannot render a valid agreed judgment absent consent at the time it is rendered."); *S & A Rest. Corp. v.*

---

3. Prime Staff cites to no authority providing that the trial court is required to have "actual knowledge" in order for a party's revocation of consent to an agreed judgment to be effective.

*Leal,* 892 S.W.2d 855, 857 (Tex.1995) ("A party may revoke its consent to a settlement agreement at any time before judgment is rendered on the agreement."); *Kennedy v. Hyde,* 682 S.W.2d 525, 528 (Tex.1984) ("[N]otwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered."); *Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983) ("[A] party has the right to revoke his consent at any time before the rendition of judgment."); *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288, 291 (1951) ("It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court."). A trial court renders judgment when it "officially announces its decision in open court or by written memorandum filed with the clerk." *Leal,* 892 S.W.2d at 857. A judgment rendered after one of the parties revokes its consent is void. *Id.; Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex.1982).

The Thirteenth Court of Appeals has held that "[a] pleading filed prior to rendition of judgment which alleges a party's revocation of consent or a motion opposing the entry of judgment on said grounds is sufficient to effectively withdraw consent to the agreed judgment." *Sohocki v. Sohocki,* 897 S.W.2d 422, 424 (Tex.App.-Corpus Christi 1995, no writ). In *Sohocki,* John Sohocki and Patricia Sohocki signed a settlement agreement on September 14, 1993. *Id.* at 423. On October 8, 1993, Ms. Sohocki filed a "Revocation of Agreement." *Id.* On October 27, 1993, the district court rendered judgment without knowledge of Ms. Sohocki's filing of her revocation of consent. *Id.* Mr. Sohocki alleged that the district court properly rendered judgment because Ms. Sohocki "should have first brought evidence of her revocation of consent to the attention of the ... court." *Id.* at 423–24. Specifically, Mr. Sohocki argued that the revoking party must request a hearing to "put the trial court on 'notice' that ... consent is lacking." *Id.* at 424. The court rejected Mr. Sohocki's argument, stating that it found "no such requirement in the Texas Rules of Civil Procedure or in caselaw." *Id.* The Fourteenth Court of Appeals has likewise noted that a settlement agreement may be revoked before the court renders an agreed judgment by filing a revocation of consent prior to the rendition of judgment. *Stein v. Stein,* 868 S.W.2d 902, 904 (Tex.App.-Houston [14th Dist.] 1994, no writ).

The Texas Supreme Court has also explained,

> The same reasons which impel the setting aside of a consent judgment rendered by the court with knowledge that a party does not consent thereto will, in the interest of justice, also impel the setting aside of a consent judgment rendered when the court is in possession of information which is reasonably calculated to prompt the court to make further inquiry into the party's consent thereto, which inquiry, if reasonably pursued, would disclose the want of consent.

*Burnaman,* 240 S.W.2d at 291–92. In *Burnaman,* the plaintiff and the defendant signed a settlement agreement on March 21, 1949. *Id.* at 289. On March 22, 1949, a clerk informed the trial court that the plaintiff was " 'trying to back out on the settlement.' " *Id.* at 290. On March 23, 1949, the trial court rendered the judgment in accordance with the settlement agreement, and the judgment was entered on December 12, 1949. *Id.* at 291. Even though the trial court did not have knowledge of the plaintiff's concerns about the settlement agreement until one day before the court rendered judgment, the Texas

Supreme Court set aside the agreed judgment. *Id.* at 292. The court noted that the judgment entered on December 12, 1949, stated that the rendition of judgment on March 23, 1949 was made " 'without either the court nor any of the attorneys for either the plaintiff or defendants having any knowledge that the plaintiff did not consider the compromise agreement acceptable.' " *Id.* The court reasoned that notwithstanding the veracity of this recital, "it does not negat[e] the fact that the court was in possession of information that plaintiff, if ever having agreed thereto, did not consider the compromise agreement acceptable at the time judgment was rendered on March 23rd." *Id.*

Here, on July 7, 2006, Prime Staff filed the agreed judgment with the trial court for its approval and entry. Also, on that same date, prior to the court's rendering judgment, St. Raphael filed its "Revocation of Consent to Agreed Judgment and Objections to Plaintiff's Proposed Agreed Judgment" with the trial court. Thus, as in *Stein* and *Sohocki*, St. Raphael gave notice through a filing with the trial court of its revocation of consent to an agreed judgment before the trial court rendered a final judgment. *See Sohocki*, 897 S.W.2d at 424; *Stein*, 868 S.W.2d at 904. St. Raphael did not have to request a hearing after filing its notice. *See Burnaman*, 240 S.W.2d at 292 (noting that clerk orally discovered that plaintiff had concerns with settlement agreement); *Sohocki*, 897 S.W.2d at 424 (reasoning that motion put court on notice); *see also Leal*, 892 S.W.2d at 856 (revoking agreed to judgment with letter). Also, in accordance with *Burnaman* and *Sohocki*, a trial judge need not have actual knowledge of a party's revocation of consent to an agreed judgment in

order to make a party's revocation effective. *See Burnaman*, 240 S.W.2d at 292 (noting that trial court may be required to investigate whether party consented to agreed judgment when court acquires information that questions whether party actually consented); *Sohocki*, 897 S.W.2d at 423 (stating that trial court did not have actual knowledge); *see also Quintero*, 654 S.W.2d at 444 (citing *Burnaman* for proposition that "[w]hen a trial court has knowledge that one of the parties to a suit does not consent to a judgment, the trial court should refuse to sanction the agreement"); *LaFrance*, 907 S.W.2d at 461–62 (agreeing with *Burnaman's* reasoning).

Our focus is not on the trial court's knowledge of a party's revocation of consent, but on the fact that consent has been revoked:

> A valid consent judgment cannot be rendered by a court when consent of one of the parties thereto is wanting. It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court. This [is a] *fundamental principle* . . . .

*Burnaman*, 240 S.W.2d at 291 (emphasis added).

The bottom line is that St. Raphael filed its revocation of consent with the trial court prior to the entry of the agreed judgment. Accordingly, we hold that the trial court erred in rendering the agreed judgment after St. Raphael had revoked its consent.

We sustain St. Raphael's second issue.[4]

---

**4.** Having held that the trial court erred in rendering the agreed judgment after St. Raphael had revoked its consent, we need not address St. Raphael's third issue, in which it

argues that it was denied due process of law when the trial court failed to conduct a hearing or trial on Prime Staff's request for entry of judgment.

## Conclusion

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.