

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-09-065-CV

---

TERRY HENRY, CLARENCE M.                                      APPELLANTS
HENRY, AND ONETA HENRY

V.

CITY OF FORT WORTH, TEXAS,                                      APPELLEES
FW SPORTS AUTHORITY, INC.,
AND TEXAS MOTOR SPEEDWAY, INC.

------------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In various issues that they have briefed together, appellants Terry Henry,

Clarence M. Henry, and Oneta Henry appeal the trial court's "Final Judgment

and Permanent Injunction."[2]  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

[2] Appellants initially list thirteen "Issues Presented," but the remainder
of their brief does not segregate its discussion of those issues; instead, the
majority of appellants' brief combines a discussion of several contentions about
alleged errors in the entry and substance of the trial court's judgment.  We will

## Background Facts

Appellee FW Sports Authority, Inc. (FWSA) owns a tract of land that it leases to appellee Texas Motor Speedway, Inc. (TMS). Appellants own three tracts of land near FWSA's tract. Appellants filed a lawsuit against appellees because of appellees' alleged attempts and threats, through various asserted acts, to interfere with appellants' rights to use their property and an easement in the manner that they wanted to. TMS filed a counterclaim against appellants, asking for a declaratory judgment stating that appellants did not have a right to place signs on FWSA's land and did not have a right to use the land other than for ingress and egress. Later, TMS and appellee City of Fort Worth, Texas (the City) requested a temporary injunction against appellants concerning the same subjects.

In September 2006, appellants voluntarily dismissed all of their claims against appellees. However, TMS and the City continued to seek further injunctive remedies against appellants, alleging in April 2008 that appellants were trespassing on FWSA's property and violating the City's sign ordinance. Later that same month, the trial court allowed appellants' counsel to withdraw,

---

address appellants' assertions that appear in the argument portion of their brief rather than particularly addressing the thirteen "Issues Presented."

ordered that appellants could not amend their pleadings to add new claims or defenses, and set July 14, 2008 as the trial date.

On the day of trial, appellees' counsel and Terry (acting pro se) appeared, but Terry's parents, Clarence and Oneta, did not appear. Appellees' counsel told the court that the parties had reached a settlement. He presented the terms of the settlement to the court by filing an unsigned document entitled "COMPROMISE AND SETTLEMENT AGREEMENT." That document, among other things, required appellants to execute a quitclaim deed, a restrictive covenant, and an agreed permanent injunction. The proposed deed, covenant, and injunction were attached to the unsigned settlement agreement.

In November 2008, TMS filed a motion to enter judgment based on what had occurred on July 14. In response, appellants, who were represented by new counsel, filed a motion to reopen the case as an active case on the court's docket and filed a response to TMS's motion to enter judgment. Appellants' motion to reopen asked the court to find that the "purported oral and unsigned written settlement agreement" was ineffective because, among other reasons, the agreement did not comply with the rules of civil procedure. Appellants' response to TMS's motion alleged that appellants had withdrawn their consent to the settlement and that the trial court could not therefore render a judgment related to it.

3

In February 2009, the trial court signed a final judgment that recited that the parties had validly completed a settlement agreement or that, alternatively, Clarence and Oneta failed to appear at trial and a default judgment was appropriate.[3] The written judgment recited that the trial court rendered judgment on July 14, 2008, and it attached documents related to the property at issue. Appellants filed their notice of appeal.

## The Parties' Settlement Agreement

Appellants first contend that the trial court erroneously signed its written judgment against them because they are not bound to the agreement announced by Terry and appellees' counsel during the July 2008 hearing. They argue that (1) Terry did not have authority to bind Clarence and Oneta to the agreement because he is not a lawyer and because the record does not establish that he is their agent; (2) the "COMPROMISE AND SETTLEMENT AGREEMENT," although filed, was not signed by anyone and therefore does not comply with the rules of civil procedure; and (3) the trial court did not render

---

[3] Some of the parties' briefing concerns whether appellees met the requirements for a default judgment, but we will not address that issue because we conclude that the parties' settlement agreement supports the trial court's judgment. *See* Tex. R. App. P. 47.1; *Hawkins v. Walker*, 233 S.W.3d 380, 395 n.47 (Tex. App.—Fort Worth 2007, pet. denied).

4

judgment during the July 2008 hearing, and appellants therefore effectively withdrew their consent to the settlement agreement.

**Terry's authority to bind Clarence and Oneta**

Terry testified during the July 2008 hearing that he had spoken to his parents about the settlement agreement's specific terms and that he had the authority to enter the agreement and execute documents related to the agreement on their behalf. In the trial court, appellants never objected to nor argued at any time—through any formal pleading, verified response, or otherwise— that Terry did not have the authority to bind Clarence and Oneta to the settlement agreement. *See, e.g.*, Tex. R. Civ. P. 93, 94. When we questioned appellants' counsel during oral argument about whether he was challenging Terry's authority to bind Clarence and Oneta for the first time on appeal, he stated, "That's what the record reflects."

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is waived. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must get an express or implied ruling from the trial court. Tex. R. App. P. 33.1(a)(2),

5

(b); *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied). Courts have applied the preservation requirement of rule 33.1(a) to matters of capacity, agency, and settlement authority. *See HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 866 (Tex. App.—Fort Worth 2005, no pet.); *see also In re Credit Suisse First Boston Mortgage Capital*, *L.L.C.*, 257 S.W.3d 486, 493 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]); *P & S Corp. v. Park*, No. 14-05-00115-CV, 2006 WL 1168804, at *4 (Tex. App.—Houston [14th Dist.] May 4, 2006, no pet.) (mem. op.).

Because appellants did not contend in the trial court that Terry lacked authority—as a nonlawyer or otherwise—to bind Clarence and Oneta to the settlement agreement, we hold that they have not preserved that argument for appeal, and we overrule that portion of their argument.[4]

**The parties' compliance with the rules of civil procedure**

Appellants also assert that because the filed settlement document in this case is unsigned, the parties' settlement is unenforceable for failing to comply with the rules of civil procedure. Rule 11 provides, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit

---

[4] We decide this issue on a procedural preservation basis only; we do not express any substantive opinion on whether a pro se party may bind other pro se parties to a settlement agreement through an oral representation of settlement authority.

6

pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, *or unless it be made in open court and entered of record*." Tex. R. Civ. P. 11 (emphasis added); *see Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied); *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 626 (Tex. App.—Fort Worth 2003, pet. denied) ("The supreme court has superimposed the requirements of Rule 11 on all settlement agreements in pending suits."). The rationale of rule 11 is that

> [a]greements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety.

*Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quoting *Birdwell v. Cox*, 18 Tex. 535, 537 (1857)). In other words, the rule attempts to avoid "disputes over the terms of oral settlement agreements." *Id.* at 461.

Appellants principally rely on the Texarkana Court of Appeals's opinion in *Songer v. Archer* to argue that the parties' agreement in this case did not comply with rule 11. 23 S.W.3d 139 (Tex. App.—Texarkana 2000, no pet.).

7

In *Songer*, the Texarkana court held that an unsigned written agreement that had been sent between the parties' attorneys and "mentioned in court" was not enforceable under rule 11 and that the only part of the parties' agreement that was enforceable comprised the parties' verbal representations in open court. *Id.* at 141.

In this case, the following exchange occurred between one of appellees' attorneys and Terry:

> Q      Mr. Henry, on page three here, during earlier negotiations, we struck through a portion of [the unsigned settlement agreement regarding payment].  But as part of settling this case today, you have agreed to pay $6,000 . . .; correct?
>
> A      Yes.
>
> Q      And you are here also to make that obligation jointly and severally on behalf of [Clarence and Oneta]?
>
> A      Yes.
>
> *Q      In regards to entering into the compromise settlement agreement and other exhibits attached to exhibit one, do you have the authority on behalf of your parents to enter into this agreement?*
>
> A      Yes, I do.
>
> Q      You have spoken to them specifically about the document and the obligations that they create; correct?
>
> A      Yes.

> *Q    And you have agreed and are here with authority on their behalf to agree to execute all of the documents included in [the unsigned settlement agreement] within two weeks of today's date; correct?*
>
> *A    Yes.*  [Emphasis added.]

After this exchange occurred, Terry affirmed his understanding of specific portions of the unsigned agreement, and the trial court designated the unsigned agreement to be filed with the district clerk and said that it would consider the unsigned agreement "as evidence of the settlement."

Thus, this case differs from *Songer* because the unsigned document here was not merely "mentioned in court"; it was filed and validated on the record by the parties as part of the settlement. Our case is more akin to *Stein v. American Residential Management, Inc.*, in which the Houston [Fourteenth] Court of Appeals held that an unsigned written agreement complied with rule 11 because it was admitted as evidence without objection at trial and, as the trial court stated, "[T]he existence of the agreement was well known and was fully and openly discussed." 781 S.W.2d 385, 386–87 (Tex. App.—Houston [14th Dist.] 1989), *writ denied*, 793 S.W.2d 1 (1990)); *see also Rich v. Rich*, No. 01-03-00078-CV, 2003 WL 21027940, at *2 (Tex. App.—Houston [1st Dist.] May 8, 2003, no pet.) (mem. op.) (holding that a divorce decree qualified

as a contract under rule 11 even though neither party signed it because the decree was transcribed in open court by a court reporter).

Like the court in *Stein*, we hold that the parties' written agreement here, although unsigned, serves as the basis for a valid settlement agreement under rule 11 because it was nonetheless "made in open court and entered of record." *See* Tex. R. Civ. P. 11; *Stein*, 781 S.W.2d at 387 (relying on the open court provision of rule 11 to hold that the unsigned agreement satisfied the rule). We note that in the context of this case, appellants' argument—that the settlement agreement should be restricted "solely [to] the testimony in open court" and should not include the detailed, written provisions that the parties recognized and understood in open court—would frustrate the purpose of rule 11 to restrict disputes over the terms of oral settlement agreements. *See Padilla*, 907 S.W.2d at 461. For these reasons, we overrule the part of appellants' argument that focuses on the settlement agreement's alleged noncompliance with rule 11.

**Appellants' attempt to revoke consent to the settlement agreement**

Next, appellants contend that they timely revoked their consent to the settlement agreement and that the trial court's judgment based on the agreement was therefore improper. They argue that although Terry agreed to the settlement's terms, he did not expressly agree to a judgment's entry during

the July 2008 hearing and that appellees were therefore required to file an independent breach of contract claim to enforce the agreement.

A rule 11 settlement agreement may not serve as the basis for an agreed judgment if a party withdraws its consent before the trial court has rendered judgment. *Padilla*, 907 S.W.2d at 461–62; *see Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (explaining that when a party revokes its consent to a rule 11 agreement before rendition occurs, the party seeking enforcement of the agreement must "pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof"); *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984) (stating that "consent must exist at the time an agreed judgment is rendered"). However, once the trial court renders judgment based on a rule 11 settlement agreement, the parties cannot revoke their consent to the agreement. *Alcantar v. Okla. Nat'l Bank*, 47 S.W.3d 815, 821 (Tex. App.—Fort Worth 2001, no pet.); *see St. Raphael Med. Clinic, Inc. v. Mint Med. Physician Staffing, LP*, 244 S.W.3d 436, 441 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Woods v. Woods*, 167 S.W.3d 932, 933 (Tex. App.—Amarillo 2005, no pet.).

Judgment is "rendered" when the trial court officially announces its decision on the matter submitted to it in open court or by written memorandum

filed with the clerk.[5]  *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) (noting that "approval of a settlement does not necessarily constitute rendition of judgment"); *Cook v. Cook*, 243 S.W.3d 800, 801 (Tex. App.—Fort Worth 2007, no pet.); *Alcantar*, 47 S.W.3d at 821.  As the Amarillo Court of Appeals has explained,

> The rendition of the trial court's decision, whether in open court or by official document of the court, is the critical moment when the judgment becomes effective.  The subsequent reduction of the rendered judgment to writing is typically carried out by the party favored by the judgment.  The signature of the trial court upon the writing is merely a ministerial act of the court . . . .

*Henry v. Cullum Cos.*, 891 S.W.2d 789, 792 (Tex. App.—Amarillo 1995, writ denied); *see also In re K.N.M.*, No. 02-08-00308-CV, 2009 WL 2196125, at *5–6 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.) (quoting *Henry*).  To qualify for rendition, the words spoken or written by the trial court must evince a present act that effectively decides the issues before the court. *S & A Rest. Corp.*, 892 S.W.2d at 858; *Cook*, 243 S.W.3d at 801.  In other words, the trial court's words must "clearly indicate the intent to render judgment at the time the words are expressed."  *S & A Rest. Corp.*, 892

---

[5] A judgment routinely goes through three stages:  rendition, signing, and entry.  *Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex. App.—Fort Worth 2004, no pet.).

S.W.2d at 858.  But what the trial court believes to be the legal effect of its act is not dispositive.  *Id.*

Here, on the date set for trial, appellees told the court that the parties had reached a settlement and indicated that certain terms of the settlement would be performed in the future.[6]  Terry expressed his understanding that the agreement released all claims asserted by all parties against each other; the record does not reflect any claims that were left open for resolution.  Near the end of the hearing concerning the settlement, the trial court set a deadline for the entry of the judgment and for "everything . . . to be finalized . . . [and] signed off."  The trial court said, "If those things don't happen, we are going to show back up here on [August] 21st to enter that agreement as the judgment."  Then, the trial court concluded the hearing by stating, "All right. I appreciate everybody's hard work on this, and I will approve the agreement and *render it as an order of the court this day*."  [Emphasis added.]

We hold that the trial court's specific words of rendition show its present intent to orally render judgment on the parties' agreement and that its statements about future acts show only its intent to sign the written

---

[6] Terry and his parents were to execute documents attached to the unsigned written settlement agreement within two weeks, and they were to pay TMS $6,000 within thirty days.

13

memorialization of its rendition and to allow performance of the judgment at a later date.[7] *Cf. Samples Exterminators v. Samples*, 640 S.W.2d 873, 874 (Tex. 1982) (holding that the trial court rendered judgment when it said, "[T]he Court approves the settlement made in open court and orders all parties to sign any and all papers necessary to carry out this agreement and to carry out the agreement that was made and dictated into the record"); *Patel v. Eagle Pass Pediatric Health Clinic, Inc.*, 985 S.W.2d 249, 252 (Tex. App.—Corpus Christi 1999, no pet.) (holding that the trial court rendered judgment when it said, "Settlement is approved and ordered.  Mr. Rhodes, . . . you draft the order, circulate it, and let's have it within five working days"); *Galerie D'Tile, Inc. v. Shinn*, 792 S.W.2d 792, 794 (Tex. App.—Houston [14th Dist.] 1990, no writ) (explaining that when the trial court intends to render, it is "preferable for the trial judge to use the specific word 'render'"); *see also K.N.M.*, 2009 WL 2196125, at *6 (holding that the trial court rendered judgment when it said, "[T]he court will approve the agreements as they have been stated for the record, and I will make it the written order of the court when it is submitted").

---

[7] We also note that the trial court's docket notes from the date of the settlement hearing relate, "Settlement proved up on record—approved by the court *and rendered*.  *Entry* on or before 8-21-08."  [Emphasis added.]

14

Because we hold that the trial court rendered judgment at the end of the parties' settlement announcement, we also hold that appellants could not later revoke their consent to the settlement agreement and that the trial court did not err by signing the judgment that was based on the agreement's terms. *See Alcantar*, 47 S.W.3d at 821; *Henry*, 891 S.W.2d at 792. We overrule this portion of appellants' argument.[8]

## The Particular Terms of the Judgment

**The language of the injunction and restrictive covenant and the award of attorney's fees**

Appellants further contend that the trial court's final judgment that contains a permanent injunction and a restrictive covenant is too broad because it prohibits them from using the disputed land in certain ways and from applying for permits under city ordinances to do so. They also challenge the trial court's award of attorney's fees to TMS.

The portion of the trial court's judgment that concerns the permanent injunction states,

---

[8] Appellants also contend in their brief, "The Reporter's Record does not show that Terry Henry agreed to any injunction." But Terry agreed to execute all documents included in the unsigned settlement agreement, and an "Agreed Final Judgment Granting Permanent Injunction" was one of those documents. Appellees' counsel also questioned Terry specifically about the terms of the injunction, and Terry agreed that he understood it.

15

> IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that [appellants] . . . are hereby, immediately restrained from:
>
>> 1) Placing any sign, banner, or other advertisement, whether temporary, permanent or hand held, on the Property owned by FW Sports Authority, Inc. and leased by TMS . . .[,] and
>>
>> 2) Making any use of the Property . . . other than ingress and egress to and from [appellants'] property . . . .

These provisions substantially reflect the terms of the permanent injunction that the parties agreed to during the settlement hearing. Terry indicated that he understood that the injunction was included as part of the agreement. The restrictive covenant that is contained in the judgment, which concerns appellants' prohibition from using their land for sexually oriented businesses, exactly matches the restrictive covenant that was part of the parties' settlement agreement.[9] Likewise, although appellants challenge the trial court's award of $6,000 in attorney's fees to TMS,[10] Terry specifically agreed during the settlement hearing that he and his parents would pay $6,000 to TMS at its attorney's office within thirty days of the hearing.

Because these specifically challenged provisions are based on the parties' settlement agreement that the trial court orally rendered as its judgment, we

---

[9] Terry specifically agreed to be bound by the restrictive covenant when he testified.

[10] Appellants do not challenge the judgment's inclusion of postjudgment interest or court costs.

16

hold that the trial court did not err by including them in its written judgment. *See Samples*, 640 S.W.2d at 874–75 (affirming the trial court's grant of injunctive relief based on a settlement agreement because a party's attempted revocation of the agreement occurred after the trial court rendered judgment); *Alcantar*, 47 S.W.3d at 821 (stating that once the trial court renders judgment based on the parties' settlement agreement, the parties cannot revoke their consent to the agreement); *see also Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 864 (Tex. App.—Dallas 2009, pet. denied) (holding that a party waived the right to complain about an order that it agreed to); *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.) (stating that "a party will not be allowed to complain on appeal of an action or ruling which she invited or induced"). Thus, we also overrule this part of appellants' argument.

**The documents attached to the final judgment**

Finally, in one page of appellants' brief, they appear to complain (without citing relevant legal authority) about the final judgment's attachment of documents describing the property at issue because the documents were not attached to (although they were referenced in) the unsigned settlement

17

agreement.[11] But appellants did not assert error in the trial court related to the judgment's attachment of descriptive property documents that were not attached to the unsigned settlement agreement. Appellants have also not contended at trial or on appeal that the judgment's attached documents incorrectly reflect the property that is subject to the parties' settlement. Thus, we hold that appellants have waived any error concerning the attachment of documents to the judgment that were not attached to the unsigned settlement agreement. *See* Tex. R. App. P. 33.1(a); *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 144 (Tex. App.—Dallas 2006, no pet.) (explaining that to "preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method"); *see also Murphy v. Leveille*, No. 02-08-00130-CV, 2009 WL 2619857, at *1–2 (Tex.

---

[11] For example, appellants complain about the judgment's attachment of a metes and bounds description of a 6.374-acre tract and a warranty deed containing a metes and bounds description of the land subject to appellants' restrictive covenant. In their brief, appellants acknowledge that the "6.374 acre tract is the [FWSA] tract," and they also acknowledge that the warranty deed that is attached to the judgment is "[t]he Terry Henry deed." We will accept these facts as stated. *See* Tex. R. App. P. 38.1(g). Appellants attached one of these documents as an exhibit to one of their motions at trial and have attached the same document to their brief. Also, Terry expressed his general understanding of the property involved in the quitclaim deed, restrictive covenant, and permanent injunction during the July 2008 hearing.

18

App.—Fort Worth Aug. 26, 2009, no pet.) (mem. op.) (holding that the appellant waived issues concerning the differences between a judgment and a settlement agreement because the appellant did not assert the differences in the trial court).  We overrule this final portion of appellants' argument.

**Conclusion**

Having overruled all of appellants' contentions, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON and WALKER, JJ.

DELIVERED:  February 18, 2010