COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

AZAR SHIRVANIFAR SNIDER,                                    No. 08-08-00196-CV

§

    Appellant,                                              Appeal from

§

v.                                                                           383rd District Court

§

WILLIAM SNIDER,                                              of El Paso County, Texas

§

    Appellee.                                              (TC # 2006CM4975)

§

## O P I N I O N

The Opinion issued August 4, 2010 is withdrawn; the following is the Opinion of this Court.

We decide today the limits of a trial court's authority to interpret a Rule 11 agreement between the parties in settlement of a division of property incident to divorce. Because the trial court exceeded established parameters, we reverse and remand.

### FACTUAL SUMMARY

William Snider filed for divorce on July 28, 2006 and Azar Snider filed a counter petition on September 21, 2006. On April 6, 2007, the parties notified the court of a possible settlement and the case was set for final hearing on June 6. On June 6, the parties agreed to mediate, and the mediation was set for August 14 with a provisional trial date of August 23. The mediation was cancelled and never reset. The final hearing was pushed back to October 12. But during what was originally scheduled as a continuance hearing on October 2, the parties tried to negotiate a settlement. An agreement was signed by the parties and filed with the court on October 31.[1]

---

[1] The handwritten agreement provided that William was "awarded what Azar not awarded." Item (3) awarded to Azar "retirement from military retirement."

An entry of judgment hearing was eventually held before the associate judge on February 15, 2008. Judge Anderson reviewed William's proposed decree line by line. Azar objected that the proposed decree limited the amount of military retirement benefits she was to receive. She complained that the written agreement awarded her "retirement from military retirement" without any percentage limitation. In short, she believed the agreement awarded her 100 percent of her husband's military benefits. Judge Anderson took the matter under advisement.

The final decree was signed on March 5. By its terms, it awarded Azar 50 percent of the community estate's interest in William's military retirement. Both parties appealed to the referring court and Azar filed a motion for new trial. The district court approved the decree and denied the motion for new trial. This appeal follows.

## RULE 11 AGREEMENTS

Azar's issues for review focus on whether the trial court had authority to do anything other than enter judgment strictly in accordance with the actual agreement. The parties filed a Rule 11 agreement distributing marital property amongst themselves. But when it came time to finalize the decree, various disputes arose. At the forefront was the issue concerning William's military retirement benefits.

Azar raises several sub-issues regarding the court's interpretation of the agreement. For clarity, we will address Azar's contention that the court erred in ordering language in a final decree that departed from the express terms of the written settlement agreement.

*Applicable Statutes and Rules*

Section 7.006 of the Texas Family Code provides:

(a) To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. The agreement

may be revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law.

(b) If the court finds that the terms of the written agreement in a divorce or annulment are just and right, those terms are binding on the court. If the court approves the agreement, the court may set forth the agreement in full or incorporate the agreement by reference in the final decree.

(c) If the court finds that the terms of the written agreement in a divorce or annulment are not just and right, the court may request the spouses to submit a revised agreement or may set the case for a contested hearing.

TEX.FAM.CODE ANN. § 7.006 (Vernon 2006).

Rule 11 of the Texas Rules of Civil Procedure provides:

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

TEX.R.CIV.P.11.

*Pertinent Authority*

Three intermediate appellate decisions guide our analysis, the first of which issued from this court. *See Keim v. Anderson*, 943 S.W.2d 938, 940 (Tex.App.--El Paso 1997, no pet.). During the course of the divorce proceedings, the trial court ordered Dr. Keim to pay attorney fees of $1,050 related to discovery disputes and interim attorney's fees of $5,000 to his wife's lawyer. *Id*. Dr. Keim only made one payment of $1,000. *Id*. Counsel subsequently withdrew and the Keims then entered into a Rule 11 agreement which did not reference either the prior temporary orders or the interim attorney's fees. *Id*. The judge accepted the stipulation and granted the divorce. *Id*. That same day, counsel filed a petition in intervention seeking to enforce the trial court's prior order for interim attorney's fees. *Id*. The trial court found that its prior award of fees had not been withdrawn by stipulation and ordered that it be included in the final decree of divorce. *Id*. Dr. Keim appealed.

We first addressed whether the trial court had the authority to modify the agreement of the parties to include the circumvented fee award. *Id*. We held that because the trial court failed to find that the agreement was not just and right--either at the time the judge approved the stipulation or at the time the written decree was entered--the terms of the agreement were binding on the court. *Id*. at 946. We then concluded that the court should have an opportunity to either accept the agreement as stipulated, set aside the agreement to consider the intervention, or reject the agreement on the ground that it did not constitute a just and right division of the parties' estates. *Id*. Because the agreement in *Keim* contained terms and provisions to which the parties did not agree, we reversed and remanded. *Id*.

In just the past few months, two of our sister courts have addressed the same issue and come to conflicting decisions. We begin with *In re Marriage of Hallman,* No. 06-09-00089-CV, 2010 WL 619290 at *1 (Tex.App.--Texarkana 2010, pet.denied)(mem. op.). Initially, Kandy and David Hallman reached an agreement on the property division and temporary spousal support. Kandy's attorney drafted a Rule 11 agreement which was signed and filed. The agreement set temporary support for Kandy in the amount of $4,000 per month from August 1, 2008 until entry of the final decree. It also provided that David was entitled to the exclusive use of the marital residence pending a sale, with the proceeds to be divided equally. After signing the agreement, Kandy and David signed a proposed decree that David could buy Kandy's interest in the house for a $15,000 down payment on a home for Kandy with additional payments of $2,500 each month until the residence was paid in full. At the time he signed the proposed decree, David was working as an oil field consultant and was earning in excess of $100,000 per year. When David lost his job, he notified Kandy that he would not be able to fulfill these obligations. Consequently, the agreed final decree was never submitted to the court and a final contested hearing was scheduled. Kandy testified that

she wanted the Rule 11 agreement enforced. David testified that he was currently working in Louisiana making one-seventh of what he was earning at the time the agreement was signed. During the course of the marriage, David did not file any federal income tax returns and as a result, the community owed delinquent taxes of $123,000. The Rule 11 agreement did not include provisions for payment to the IRS, nor did it address the issue of post-divorce spousal maintenance.

The trial court enforced the Rule 11 agreement as a contract and incorporated the agreement into the final decree of divorce. Kandy was awarded a money judgment for arrearages of temporary support in the amount of $36,900 and a judgment for spousal maintenance in the amount of $36,000, to be paid at a rate of $1,000 per month. The court ordered David to pay 80 percent of the IRS debt, with Kandy to pay the remainder.

David appealed. He first complained that the trial court erred by adding additional terms to the Rule 11 agreement. The court began with the support arrearage. Pursuant to the terms of the Rule 11 agreement, David was to pay Kandy $4,000 per month as temporary support until a final decree of divorce was entered. Kandy's uncontested testimony established that temporary support payments of $52,000 should have been paid through August 2009, but only $15,100 had been paid, leaving an arrearage of $36,900. This was sufficient evidence upon which to render a money judgment. As for the IRS debt, the Rule 11 agreement did not mention it. Because the agreement did not address payment of the debt, the court was free to address that issue in the decree. If a Rule 11 agreement fails to dispose of all issues, a trial court must nevertheless dispose of all issues properly before it. Finally, the court considered spousal maintenance. While the Rule 11 agreement contained specific provisions for the payment of temporary support, it did not address post-divorce spousal maintenance. The trial court was similarly obliged to address this issue in the final decree. The court affirmed the judgment, expressly disagreeing with David that the only choice the trial court

had was to either enforce the Rule 11 agreement without addressing the other marital issues or to declare the Rule 11 agreement invalid. The court of appeals then concluded it was appropriate for the trial court to honor the Rule 11 agreement as to all matters it covered and to address the remaining issues in dispute.

On the heels of *Hallman*, the Beaumont Court of Appeals has issued *Pohla v. Pohla*, No. 09-09-00023-CV, 2010 WL 877555 at *1 (Tex.App.--Beaumont 2010, pet. filed)(mem. op.). There, the parties agreed to a division of property that would in effect "give 58 percent of the community assets to [Barbara] and 42 percent of the community assets to [Charles]." The community assets were itemized and each asset was awarded to one of the spouses along with a corresponding value. The 58 percent-42 percent division of the community estate was then to be effectuated by offset of an AG Edwards IRA account in Charles' name. The parties agreed the IRA account would be "divided in such a way as to make an overall 58/42 division . . . ." At the time, they had not "crunched all the numbers," but they agreed that the IRA account would be offset as of its value on April 30, 2008, in order to accomplish their goal of a 58/42 division of the community estate. The asset at issue in the appeal was Barbara's teacher retirement benefits which had not been listed on the worksheet.

At the prove-up hearing, the court granted the divorce and approved the property settlement agreement as a "fair and equitable one, a right and just division of that marital estate." Barbara's counsel then advised the court about the oversight:

> I know its not a problem but I feel like I need to say it for the record. She has a retirement account. Her teacher's retirement account that I think goes without saying it goes to her. Just wanted to get that on the record.

Charles' attorney agreed with that assessment. But the proposed final decree awarded 100 percent of the teacher retirement benefits without any corresponding offset to the IRA account or any

reference to the agreement that the community estate would be divided 58 percent-42 percent. The trial court overruled Charles' objection and awarded Barbara 100 percent of her retirement benefits.

Charles appealed. The court recounted the requirements of Rule 11 agreements. A Rule 11 agreement must be interpreted by the trial court based on the intention of the parties as expressed in the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein and the attitude of the parties with respect to the issues. Because the parties had not agreed to the award of the teacher retirement at the time the judgment was rendered, the award of the retirement account was outside the scope of the agreed judgment. When a trial court renders judgment on the parties' settlement agreement, the judgment must be in strict compliance with the terms of the agreement. "The trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties." *Id.* at *3, *citing Keim*, 943 S.W.2d at 946. When a consent judgment is not in strict compliance with the terms of the parties' settlement agreement, the judgment must be set aside. The court affirmed the granting of the divorce and reversed and remanded the property division.

We adhere to our holding in *Keim* and agree with the decision in *Pohla*. Because the final divorce decree contained terms and provisions that the parties did not agree to, we are obligated to reverse and remand. *See Keim*, 943 S.W.2d at 946. The trial court will have an opportunity to either accept the agreement as stipulated, set aside the agreement to consider the military retirement dispute, or reject the agreement on the ground that it does not constitute a just and right division of the parties' estates. *See Keim*, 943 S.W.2d at 946.

September 22, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Bramblett, J.

Bramblett, J., sitting by assignment