# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00385-CV

**Armando Salazar, Appellant**

**v.**

**Patricia Salazar, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
NO. 227,559-E, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a divorce decree signed by the trial court in March 2013, granting a divorce to appellant Armando Salazar and appellee Patricia Salazar, setting out child support, conservatorship, and visitation provisions, and dividing the marital estate. Armando complains that the 2013 decree is improper because the trial court entered a final decree in July 2008 and lost the power to undo that decree thirty days later. Because we agree, we vacate the 2013 decree and render judgment that the 2008 decree was a final judgment.

### Factual and Procedural Background

In January 2008, Armando filed for divorce. On July 9, 2008, the trial court signed a "Final Decree of Divorce" that included at the top a handwritten notation stating "Rule 11." That decree, which was signed by Armando and Patricia and their respective attorneys, granted the parties a divorce, set out provisions governing child support and visitation, and divided the marital estate. There are several handwritten additions to the document, all apparently written by Patricia's attorney;

the trial court, the parties, and the parties' attorneys did not initial or sign next to any of the handwritten additions.[1]

In relevant part, Armando is awarded:

H-5.   The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of [Armando's] past, present or future employment.

H-6.   The individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in [Armando's] name.

H-7.   All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of [Armando's] service in the United States Army, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of [Armando's] past, present, or future employment.

At the top of the page, there is a handwritten note stating, "Remainder milit ret," and there is a handwritten paragraph H-9 mid-page, which states in its entirety, "50% profit share - QDRO."

The 2008 decree awards Patricia:

W-5.   The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee

---

[1]   We note that handwritten additions to a printed form control over pre-printed terms. *Charles R. Tips Fam. Trust v. PB Commercial LLC*, No. 01-13-00449-CV, ___S.W.3d ___, 2014 WL 4085496, at *4 (Tex. App.—Houston [1st Dist.] Aug. 19, 2014, no pet. h.); *see Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 471-72 (Tex. 2011) ("changes in a printed form must be accorded special weight in construing the instrument").

savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of [Patricia's] past, present or future employment.

Paragraph W-6 states that Patricia is awarded "[t]he individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in [Patricia's] name," but is followed by the handwritten addition, "excluding what is awarded to H." Finally, there is a handwritten Paragraph W-8, which states in its entirety, "% Milit Ret of H's - QDRO." The clerk's record does not reflect that a qualified domestic relations order ("QDRO") or any other domestic relations order was attached to the 2008 decree.

In November 2009, after being informed that "the court records indicated that his divorce was still pending despite the entry of the Rule 11 Final Decree of Divorce on July 9, 2008," Armando filed a Motion to Sign Decree of Divorce, asking the trial court to sign a "Final Decree of Divorce in the form attached to this motion." In April 2010, he filed a Supplemental Petition for Suit on Written Contract, stating that the trial court had rendered a divorce in July 2008 based on the parties' Rule 11 agreement, that Armando had complied with the provisions of that agreement, and that Patricia had refused to comply. Armando asked the trial court to hold that the Rule 11 agreement "is an agreement incident to divorce and is fully enforceable as written" and asserted that "[t]he clause[] in the Rule 11 agreement states that [Armando] receives 'all sums' related to his service in the United States Army and is awarded 'all sums.'"

In late October 2010, the case was heard by the trial court, and following the hearing, Armando filed a motion for new trial and rehearing. On March 15, 2013, the trial court signed a third document titled, "Final Decree of Divorce," stating that the cause was heard on July 9, 2008, and September 2, 2010. The March 2013 decree and its attendant "Domestic Relations Order

3

[Military Retirement]" awarded Armando half of Patricia's 401(k) and awarded Patricia almost half of Armando's disposable monthly retirement pay.

Armando appeals, asserting that (1) the July 2008 Decree was the final divorce decree, (2) the trial court lacked plenary power to modify the division of Armando's military retirement in its March 2013 Decree, and (3) that the court was bound by the parties' agreement and lacked the authority to modify the agreement, even to resolve an ambiguity.

**Discussion**

"[A] judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93 (Tex. 2001); *St. Raphael Med. Clinic, Inc. v. Mint Med. Physician Staffing, LP*, 244 S.W.3d 436, 439 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Whether a decree is final is determined by examining its language and the record. *Lehmann*, 39 S.W.3d at 195. "[A]n agreed judgment is a final judgment on the merits," and has the same effect as if it had been rendered after a trial, except that the agreement excuses errors and ends all controversy between the parties. *St. Raphael Med. Clinic*, 244 S.W.3d at 439; *see Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000) ("An agreed judgment has the same effect as any court judgment" and "has neither less nor greater force or effect than it would have had it been rendered after litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties.").

In this case, the 2008 decree, despite the handwritten "Rule 11" notation at the top, is titled a Final Decree, contains provisions governing child conservatorship, visitation, and support,

4

divides the marital estate, orders that the parties' home be sold and proceeds split, requires each party to pay his or her own legal fees, sets out certain orders related to the parties' 2008 taxes, and notes that the trial court reserves the right to make orders necessary to clarify and enforce the decree. The decree was signed by both parties, their attorneys, and the trial court and concludes with the statement, "IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable."[2] Further, the decree contains the following clause:

> Petitioner, ARMANDO SALAZAR, and Respondent, PATRICIA SALAZAR, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

"A statement like, 'This judgment finally disposes of all parties and all claims and is appealable', would leave no doubt about the court's intention," and "if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final." *Lehmann*, 39 S.W.3d at 206. The 2008 decree includes exactly that statement and purports by its plain language throughout the document to be a final judgment. Although Patricia and even the trial court may not have intended for the decree to be a

---

[2] The trial court's docket sheet states that on July 9, 2008, "divorce granted" and "property per Rule 11."

5

final judgment, "an order can be a final judgment for appeal purposes even though it does not purport to be if it actually disposes of all claims still pending in the case." *Id.* at 204 ("Granting more relief than the movant is entitled to makes the order reversible, but not interlocutory.").

As for the argument that the handwritten additions render the decree too vague to be considered a final judgment,[3] "[t]he record may help illumine whether an order is made final by its own language, so that an order that all parties appear to have treated as final may be final despite some vagueness in the order itself, while an order that some party should not reasonably have regarded as final may not be final despite language that might indicate otherwise." *Id.* at 206. And, although a judgment entered in reliance on a settlement agreement or a Rule 11 agreement must be in strict compliance with the terms of the agreement, such complaints should be raised in a direct appeal from the final judgment. *See Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) ("When a consent judgment is rendered without consent or is not in strict compliance with the terms of the agreement, the judgment must be set aside."); *Snider v. Snider*, 343 S.W.3d 453, 457 (Tex. App.—El Paso 2010, no pet.) (because decree contained terms not agreed to, court was obligated to reverse and remand); *Lohmann v. Lohmann*, No. 08-99-00115-CV, 2001 WL 1515863, at *9 (Tex. App.—El Paso Nov. 29, 2001, no pet.) (not designated for publication) (in appeal from suit to enforce and clarify divorce decree, wife complained that decree was vague and inconsistent with Rule 11 agreement; court stated, "Any void-for-vagueness argument concerning the divorce decree could have been raised in a direct appeal, a motion for new trial, or a bill of review.").

---

[3] The parties seem to agree that exact calculations about Armando's military retirement could not be completed until his retirement, which occurred more than a year later, in October 2009.

Based on the language included in the 2008 decree and agreed to by the parties, we conclude that the 2008 decree was a final judgment. Although the decree might have included terms not agreed to or omitted terms that were contemplated, the time for raising such complaints was in a direct appeal from the decree. *See Snider*, 343 S.W.3d at 457; *Lohmann*, 2001 WL 1515863, at *9. The only power the trial court retained after its plenary power ran was to issue orders to clarify or enforce the decree or to render a QDRO. *See* Tex. Fam. Code §§ 9.007, .101-.105; *see also Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003) (in appeal from post-divorce QDRO, court "must interpret the decree to determine not what the trial court should have done but, if possible, what the court actually did," and if decree is ambiguous, court "should review the record along with the decree to aid in interpreting the judgment" and "should adopt the construction that correctly applies the law").

## Conclusion

Because the 2008 decree was a final judgment, the trial court lost plenary power to "set aside" the decree thirty days after it was signed. We therefore vacate the trial court's later decree, signed March 15, 2013, and render judgment that the "Final Decree of Divorce," signed July 9, 2008, was a final judgment.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Vacated and Rendered

Filed: January 23, 2015

7